2002 UT 01

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jeffrey Lynn JONES, Defendant and Appellant.**

**No. 20000238.**

Supreme Court of Utah.

Jan. 4, 2002.

Rehearing Denied March 12, 2002.

---

Mark L. Shurtleff, Att'y Gen., Christopher D. Ballard, Asst. Att'y Gen., Salt Lake City, Sandra L. Corp, Ogden, for plaintiff.

Maurice Richards, Jerald N. Engstrom, Ogden, for defendant.

HOWE, Chief Justice:

## INTRODUCTION

¶ 1 Defendant Jeffrey Lynn Jones appeals his convictions which were based on his conditional plea of guilty and mentally ill to two counts of attempted aggravated murder, both first degree felonies, in violation of section 76–5–202(1)(b) & (c) of the Utah Code (1999). Defendant's plea reserved the right to appeal the denial of his motion to quash the bindover.

## BACKGROUND

¶ 2 After consuming beer and whiskey at his father's home, defendant entered a convenience store in Ogden, Utah, carrying a loaded shotgun. He immediately shot and wounded a customer, Dan Nebeker, and then leaned over the counter and shot Karan Rice, the store's clerk. Next, defendant turned around and shot Nebeker a second time. He then took additional shells from his pocket, reloaded the shotgun, and fired two more times at Rice. Finally, defendant laid the shotgun on the store counter, called 911, and reported that he had killed two individuals. He stayed on the telephone until the police arrived and arrested him. Both victims survived the incident.

¶ 3 Defendant was charged with two counts of attempted aggravated murder, both first degree felonies, in violation of section 76–5–202(1)(b) & (c). After a preliminary hearing, the court bound over defendant for trial on both counts. Subsequently, he moved to quash the bindover, arguing that the State could not properly charge him with attempted aggravated murder because that crime does not exist in Utah. The district court denied the motion to quash the bindover, and defendant petitioned this court to review the interlocutory order. We denied that petition.

¶ 4 Defendant then entered a conditional plea of guilty and mentally ill, reserving his right to appeal the denial of his motion to quash the bindover. Following a hearing to determine defendant's mental status, the district court found that he suffered from depression and anxiety, but, "in spite of these problems ... the real motivation involved in the commission of this [crime] didn't relate to those things." Instead, the court attributed the crime to "excessive amounts of alcohol and the defendant's character." The court concluded that he was not mentally ill as defined by section 76–2–305 of the Utah Code and sentenced him to serve two concurrent terms of five years to life. Defendant now appeals his convictions.

## STANDARD OF REVIEW

¶ 5 Whether the crime of attempted aggravated murder exists in Utah is a question of law, reviewed for correctness, giving no deference to the trial court's conclusion. *Stephens v. Bonneville Travel, Inc.,* 935 P.2d 518, 519 (Utah 1997). The trial court's finding that defendant was not mentally ill is a factual determination reviewed for clear error, giving deference to the trial court's findings. *State v. DePlonty,* 749 P.2d 621, 627 (Utah 1987).

## ANALYSIS

¶ 6 Defendant raises two arguments: (1) the trial court erred when it refused to quash the bindover on two counts of attempted aggravated murder because that crime does not exist, and (2) the trial court erred when it failed to find him mentally ill at the time of sentencing. We address each issue in turn.

## I. ATTEMPTED AGGRAVATED MURDER

■ ¶ 7 Defendant contends he was improperly charged with attempted aggravated murder because that crime does not exist in Utah. He was charged under section 76–5–202(1)(b) and (c) of the Utah Code, which provides:

(1) Criminal homicide constitutes aggravated murder if the actor intentionally or knowingly causes the death of another under any of the following circumstances:

. . .

(b) the homicide was committed incident to one act, scheme, course of conduct, or criminal episode during which two or more persons were killed, or during which the actor attempted to kill one or more persons in addition to the victim who was killed;

(c) the actor knowingly created a great risk of death to a person other than the victim and the actor[.]

Utah Code Ann. § 76–5–202 (1999). The purpose behind the aggravating circumstances requirement is "to distinguish between those types of murders which the legislature feels should be punished more severely than other murders." *State v. James,* 819 P.2d 781, 796 (Utah 1991). There is no requirement that a defendant kill the "two or more" persons referred to in subsection (1)(b) or that a defendant kill one person and be a party to the murder of the others. The killings must occur during one act, scheme, course of conduct, or criminal episode, but the defendant need only be responsible for one of them.

*State v. Alvarez,* 872 P.2d 450, 459 (Utah 1994). In the case before us, defendant asserts that because the incident resulted in the wounding of two victims, but not in the death of either of them, the aggravating circumstances listed in section 76–5–202(1)(b) and (c) are not applicable to his case.

■ ¶ 8 Because both victims survived, the State charged defendant with attempted aggravated murder. In support of his contention that the charged crime does not exist, defendant relies upon *State v. Bell,* where we held that "the felony murder rule cannot be applied unless the death of another occurred. Thus, the crime of attempted felony murder does not exist as a crime in Utah." 785 P.2d 390 (Utah 1989). Defendant's argument, however, confuses felony murder with attempted murder. Under the felony murder doctrine, any death resulting from the commission or attempted commission of an enumerated felony is enhanced to murder, regardless of the intent of the actor. *See* Utah Code Ann. § 76–5–202(1)(d) (1999). Because the felony murder doctrine does not demand proof of intent, the statute requires death of a victim in order to constitute that crime. *See Bell,* 785 P.2d at 390.

■ ¶ 9 In contrast, an attempted murder is "an act done with the intent to commit that crime . . . but falls short of its actual commission." *State v. Norman,* 580 P.2d 237, 239 (Utah 1978), *overruled on other grounds by State v. Standiford,* 769 P.2d 254, 259 (Utah 1988). Section 76–4–101 of the Utah Code provides:

(1) For purposes of this part a person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for the commission of the offense, he engages in conduct constituting a substantial step toward commission of the offense.

(2) For purposes of this part, conduct does not constitute a substantial step unless it is strongly corroborative of the actor's intent to commit the offense.

Utah Code Ann. § 76–4–101 (1999). Thus, the offense of attempt requires an intent to commit a specific offense. *See Bell,* 785 P.2d at 390. "In establishing the nexus between intent and act it must be borne in mind that an attempt transcends intent, yet fails to culminate in its planned accomplishment." *State v. Castonguay,* 663 P.2d 1323, 1326 (Utah 1983). The intent required to commit attempted aggravated murder is "the same intent as that required to commit the murder itself and may be inferred from defendant's conduct and the surrounding circumstances." *State v. Collier,* 736 P.2d 231, 234 (Utah 1987); *see also State v. Howard,* 405 A.2d 206, 212 (Me.1979) (stating the "person is guilty of criminal attempt if he acts with the

intent to complete the commission of target offense").

¶ 10 In *Bell*, the defendant shot his victim during the commission of a robbery. Because the victim survived, this court held that the defendant was improperly charged with attempted felony murder. 785 P.2d at 394. However, the facts in the instant case differ significantly from those in *Bell*. Here, defendant was not committing an underlying felony when the act of shooting his victims occurred. Instead, acting with the kind of culpability required to commit aggravated murder, he intentionally and knowingly walked into the convenience store, with no apparent purpose other than to shoot someone. He did everything he could to facilitate the offense short of inflicting actual death. Defendant conducted himself in such an unambiguous way as to not reasonably allow for any other mens rea. *See* Jeffrey F. Ghent, Annotation, *What Constitutes Attempted Murder*, 54 A.L.R.3d 612 (1973). The facts, and the absence of any innocent explanation for his conduct, are strongly corroborative of his intent to commit aggravated murder. Thus, *Bell* is not supportive of his position.

¶ 11 Defendant contends that the State did not prove his intent to kill anyone in the shootings, and that "absent the physical facts" surrounding the incident, there was no evidence of whether he merely intended to injure rather than kill his victims. His contention lacks merit. Normally, "where it takes a particular intent to constitute a crime that particular intent must be proved either by direct or circumstantial evidence, which would warrant the inference of the intent with which the act was done." *Castonguay*, 663 P.2d at 1326 (quoting *Thacker v. Commonwealth*, 134 Va. 767, 114 S.E. 504, 505 (1922)). However, in this case, defendant waived the right to raise this argument. The obligation of the State was relieved when defendant admitted his intent by pleading guilty and mentally ill to the charges against him. *Bruner v. Carver*, 920 P.2d 1153, 1156 (Utah 1996) (holding that when an accused pleads guilty, he gives up the presumption of innocence). Thus, the State's burden of proof was eliminated when defendant formally admitted his intent by pleading guilty and mentally ill as charged.

## II. MENTAL ILLNESS

¶ 12 Defendant contends that the trial court erred when it failed to find him mentally ill at the time of sentencing. Section 76–2–305 of the Utah Code defines mental illness as

(4)(a) ... a mental disease or defect that substantially impairs a person's mental, emotional, or behavioral functioning. A mental defect may be a congenital condition, the result of injury, or a residual effect of a physical or mental disease and includes, but is not limited to mental retardation.

(b) "Mental illness" does not mean:

(i) a personality or character disorder; or

(ii) an abnormality manifested primarily by repeated criminal conduct.

Utah Code Ann. § 76–2–305 (1999).

¶ 13 In this case the State's expert testified that in her opinion defendant was not mentally ill within the definition provided by section 76–2–305. In contrast, defendant's expert witness testified that alcoholism was a mental illness. Defendant complains that the trial court disregarded the testimony of his expert witness. However, "the fact finder was not obliged to accept his disclaimers, but could draw his own conclusion from the evidence." *State v. Hansen*, 732 P.2d 127, 131 (Utah 1987) (citing *State v. Carlson*, 635 P.2d 72, 74–75 (Utah 1981)). The fact that there is a diagnosis does not result in the court being required to find defendant mentally ill; the question is whether the diagnosis is a mental illness under the statute.

¶ 14 Lastly, defendant contends that the trial court should have applied section 76–5–205.5 to reduce his conviction to attempted murder. However, "we do not consider this argument as it is presented for the first time on appeal, and there is no record before this court to substantiate [defendant's] claim." *Hansen*, 732 P.2d at 131. Even if this court were to address the claim, subsection (3) of the statute provides:

(3) A defendant who was under the influence of voluntarily consumed, injected, or ingested alcohol, controlled substance, or volatile substances at the time of the alleged offense may not claim mitigation of the offense under this section on the basis of mental illness if the alcohol or substance caused, triggered, or substantially contributed to the mental illness.

Utah Code Ann. § 76–5–205.5(3) (1999). Here, the trial court found that "excessive amounts of alcohol which [defendant] was consuming at the time" motivated him to shoot his victims. Thus, defendant is precluded from mitigation of his offense under this section.

## CONCLUSION

¶ 15 We hold that attempted aggravated murder does exist as a crime and that the record supports that defendant committed that crime. We hold further that there is sufficient evidence to support the trial court's factual determination that defendant was not mentally ill. Therefore, we affirm defendant's convictions and sentences.

¶ 16 Associate Chief Justice RUSSON, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Chief Justice HOWE'S opinion.