2007 UT 98

STATE of Utah, Plaintiff and Petitioner,

v.

Brandon WILLIAMS, Defendant and Respondent.

No. 20060517.

Supreme Court of Utah.

Dec. 21, 2007.

Mark L. Shurtleff, Att'y Gen., Karen A. Klucznik, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Margaret P. Lindsay, Orem, for defendant.

NEHRING, Justice:

¶ 1 May a person who possesses a controlled substance free of any packaging or other form of drug paraphernalia be in peril of conviction of a felony, while another person who possesses the same controlled substance, but who, by design or happenstance, stored the drug in a plastic bag may potentially be convicted of only a misdemeanor? Both the district court and the court of appeals concluded that the constitutional guarantees of equal protection and uniform application of laws permitted this outcome. By writ of certiorari to the court of appeals, we agreed to review the court of appeals' ruling and now reverse.

## BACKGROUND

¶ 2 Brandon Williams was arrested after he failed to return to jail as ordered. During a search incident to arrest, a Utah County deputy sheriff discovered a plastic bag containing methamphetamine residue in Mr. Williams' pocket. Relevant to this case, Mr. Williams was charged by amended information with one count of possession of a controlled substance in a drug-free zone with prior convictions, a first degree felony in violation of Utah Code section 58–37–8(2) (Supp.2004).

¶ 3 At his preliminary hearing, Mr. Williams successfully moved to dismiss this charge in favor of the lesser charge of misdemeanor possession of drug paraphernalia in violation of Utah Code section 58–37a–5. Mr. Williams argued that because the evidence could sustain a charge of either felony possession or misdemeanor paraphernalia possession, he was entitled to the lesser charge under *State v. Shondel*, 22 Utah 2d 343, 453 P.2d 146 (1969), and its associated caselaw. The magistrate granted Mr. Williams' motion and explained in response to the State's objections that

> [s]ince the existence of residue is the only evidence that can support a charge of either possession of drug paraphernalia or possession of a controlled substance, ... the exact conduct is being prohibited. Therefore, the *Shondel* [d]octrine does apply in this case and the Defendant must be charged with the offense carrying the lesser penalty.

¶ 4 The State petitioned for interlocutory appeal. We transferred the State's petition to the court of appeals. In an unpublished decision, the court of appeals affirmed the district court's ruling. *State v. Williams*, 2006 UT App 181U, 2006 WL 1174243. We granted certiorari to consider whether the court of appeals correctly applied what has come to be known as the *Shondel* doctrine.

## ANALYSIS

### I. THE COURT OF APPEALS' ANALYSIS OF THE *SHONDEL* DOCTRINE

¶ 5 The court of appeals took care to begin its analysis of Mr. Williams' case with an orthodox, plain language inquiry into whether the elements of possession of a controlled substance overlapped with the elements of possession of drug paraphernalia and, if they did, by how much. The court first noted that in order to convict Mr. Williams of the felony of possession of a controlled substance, the State needed to show that he knowingly or intentionally possessed the methamphetamine residue. The court then turned its consideration to misdemeanor possession of drug paraphernalia and

observed that the statute made it unlawful to possess a container used to store the controlled substance; the presence of drug residue was one among many facts that could be considered when attempting to discern whether a container, such as a plastic bag, was innocent or illicit.

¶ 6 Had the court of appeals stopped its analysis at this point, it could have concluded that the plain language of the statutes communicated this message: possession of a controlled substance is a felony, while possession of drug paraphernalia—which may be proven by the presence of the residue of a controlled substance within a container—is a misdemeanor. Clearly, the elements of the two offenses are not identical. To be guilty of possession of a controlled substance, one need not possess drug paraphernalia. Similarly, one may be guilty of possessing drug paraphernalia while not being in possession of a controlled substance.

¶ 7 The court of appeals did not understand its *Shondel* analysis to end here, however. Despite its recognition that the *Shondel* doctrine appears to permit the Legislature to enact statutes that impose different penalties for criminal conduct so long as the statutory elements are not identical, the court of appeals expanded the scope of its inquiry in Mr. Williams' case to include consideration of the specific facts. The court noted that

> [u]nder the facts of this case, the State would be required to demonstrate exactly the same proof to convict Defendant for possession of a controlled substance or possession of drug paraphernalia.... Therefore, both charges—possession of a controlled substance and possession of drug paraphernalia—depend solely on Defendant's possession of methamphetamine residue.

*State v. Williams*, 2006 UT App 181U, para. 5. According to the court of appeals' interpretation of the *Shondel* doctrine, the particular circumstances of a defendant's conduct could trigger the application of the doctrine even in the absence of perfect congruity of the statutory elements of the crimes applicable to that conduct.

¶ 8 This line of reasoning led the court of appeals to hold that the State was prohibited from prosecuting Mr. Williams for the more serious offense, felony possession of a controlled substance. The itinerary of the courts' reasoning appears to have taken it into realms quite distant from the equal protection terrain in which the *Shondel* doctrine resides. *See State v. Shondel*, 22 Utah 2d 343, 453 P.2d 146, 147 (1969). Central to the guarantee of equal protection under the law is the notion that if a law has the effect of treating differently classes of people subject to the law, the government must adequately justify its disparate treatment. *E.g., State v. Merrill*, 2005 UT 34, ¶ 31, 114 P.3d 585. As we will discuss, the *Shondel* doctrine is linked to equal protection in an indirect and unusual way. The doctrine presumes that the Legislature is never justified in enacting two criminal statutes with identical elements but that carry different degrees of severity and impose different penalties. *Shondel*, 453 P.2d at 148. Should the Legislature do so, it does not inevitably create unconstitutional classifications of persons, but rather creates the possibility that prosecutors may exploit the options available to them by reason of the identical statutes and charge persons under the statutes in a way that might create discriminatory classifications. The purpose of the *Shondel* doctrine, then, is to cut off the possibility of creating unconstitutional classifications rather than to remedy classifications actually created by identical criminal laws.

¶ 9 As the court of appeals' decision demonstrates, the application of the *Shondel* doctrine in the cause of fending off prosecutors' power to create unconstitutional classifications of defendants can itself create the perverse classification of defendants described in the opening sentence of this opinion: possessors of controlled substances without paraphernalia may face felonies, while possessors of controlled substances who also possess paraphernalia are shielded from the risk of a felony conviction. That an entirely plausible and logical application of the *Shondel* doctrine could have carried the court of appeals to such an anomalous result suggests that a flaw lurks within the doctrine itself and not in the way the court of appeals applied it.

Locating that flaw is the task to which we now turn our attention.

## II. THE *SHONDEL/BATCHELDER* DILEMMA

¶ 10 The notion that a prosecutor may be empowered to charge two people who have engaged in the same conduct with different crimes carrying different penalties is one that offends our sense of fairness. We have also found it to violate the guarantees of equal protection of the law enshrined in the United States Constitution. *E.g., State v. Shondel*, 22 Utah 2d 343, 453 P.2d 146, 147 (1969). We have characterized what has come to be known as the *Shondel* doctrine this way: "Equal protection of the law guarantees like treatment of all those who are similarly situated. Accordingly, the criminal laws must be written so that … the exact same conduct is not subject to different penalties depending upon which of two statutory sections a prosecutor chooses to charge." *State v. Bryan*, 709 P.2d 257, 263 (Utah 1985). That this core holding of *Shondel* would come to claim the title of a "doctrine" is emblematic of its durability and perceived significance. Having bestowed on *Shondel* the status of doctrine, it would seem that we have an obligation to explain our potentially contrary statement that

> [t]he mere fact that one criminal episode may arguably violate several criminal statutes, thus giving the prosecutor discretion to choose which of the violations to prosecute, does not deny the accused equal protection of the laws under the federal constitution unless the prosecutor can be shown to have impermissibly discriminated against a particular class of defendants.

*State v. Tuttle*, 780 P.2d 1203, 1215 (Utah 1989) (citing *United States v. Batchelder*, 442 U.S. 114, 124–25, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)).

¶ 11 Perhaps the law can tolerate simultaneous commitments to fending off unfettered prosecutorial license when deciding which of two crimes with identical elements but different penalties to charge and to permit the exercise of that very prosecutorial license so long as the charging decision is not discriminatory. Until now, we have been content to honor both the *Shondel* doctrine and the teaching of *Tuttle* without acknowledging their differences. This might not be of concern if they offered different solutions to different problems, but they do not. Instead, they present two discrete and contradictory ways to solve the same legal problem. That problem exists because the efforts of legislatures to define criminal conduct and to prescribe the sanctions for those crimes have yielded laws that overlap one another and provide disparate penalties for the same offenses.

¶ 12 There is nothing inherently wrong with criminal laws that overlap. Indeed, overlapping criminal laws typically advance legitimate and wholly defensible objectives. No one would take issue, for example, with the legislative decision to make both murder and felony murder crimes, despite the fact that they overlap in their elements and expose those convicted of them to different penalties. A legislature is clearly justified when it determines that taking the life of another in the course of committing an additional and distinct criminal act is more reprehensible and worthy of more severe sanction than murder committed under other circumstances. At the same time, the enforcement of criminal laws with overlapping elements or with disparate penalties for identical conduct is limited by fundamental constitutional guarantees, most notably the guarantees against double jeopardy and of equal protection of the laws. The manner by which these constitutional guarantees have come to limit the operation and application of overlapping criminal laws is through the merger doctrine, the *Shondel* doctrine, and the approach announced by the United States Supreme Court in *Batchelder* and adopted by this court in *Tuttle*. Because each of these doctrines and approaches owes its existence to the statutory circumstance at issue here—the effect of overlapping criminal laws—it is useful to our discussion to summarize the content of each of these devices.

¶ 13 The merger doctrine derives from the constitutional guarantee that a person may not be held accountable twice for the same criminal conduct. *State v. Ross*,

2007 UT 89, ¶ 63, 174 P.3d 628; *see* U.S. Const. amend. V. The Legislature codified the merger doctrine in statute, providing that "[a] defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense." Utah Code Ann. § 76–1–402(3) (2003). We conduct a merger analysis "by comparing the statutory elements of the two crimes as a theoretical matter, and, where necessary, by reference to the facts proved at trial." *State v. Hill,* 674 P.2d 96, 97 (Utah 1983).

¶ 14 Both *Shondel* and *Batchelder* responded to equal protection challenges to overlapping criminal statutes. Of the analytic approaches announced in both cases, neither shares the merger model's use of both the elements of the relevant statutes and the defendant's affairs to conduct its assessment. The *Shondel* doctrine limits its inquiry to the elements of the criminal statutes which the defendant claims overlap and applies only when "two statutes are wholly duplicative as to the elements of the crime." *Bryan,* 709 P.2d at 263. Unlike the merger doctrine, the *Shondel* doctrine treats as irrelevant the conduct of a particular defendant; only the content of the statutes matters. Conversely, the approach relied on by the United States Supreme Court in *Batchelder* limits its consideration of the statutes at issue to a more familiar equal protection analysis. 442 U.S. at 124–25 & n. 9, 99 S.Ct. 2198. In *Batchelder,* for example, the Court looked to whether the prosecutorial choice to pursue a conviction under one statute instead of another—Mr. Batchelder was convicted and sentenced to the maximum of five years in prison under one statute that prohibited felons from possessing firearms, while another seemingly identical statute limited the penalty to two years of imprisonment—resulted in selective enforcement using unconstitutional classification criteria like race or religion. *Id.*

¶ 15 The *Shondel* doctrine, then, presumes that unfettered prosecutorial discretion to charge under two statutes with identical elements but different penalties violates the guarantee of equal protection under the law. Thus, a reviewing court need only examine the statutes that are claimed to give rise to the prosecutor's discretion. *Batchelder,* by contrast, finds unfettered prosecutorial discretion to choose among similar statutes with disparate penalties benign unless the discretion was exercised in an unconstitutional manner.

¶ 16 If any doubt existed that the contradictions between the *Shondel* doctrine and *Batchelder* cannot be sidestepped with the rationale that they address different legal issues, that doubt should be put to rest after examining two cases handed down within six months of each other, one by this court and the other by the Wyoming Supreme Court, that confronted equal protection challenges to the felony murder and child abuse homicide statutes of the respective states. In *State v. Fedorowicz,* 2002 UT 67, 52 P.3d 1194, we declined to apply the *Shondel* doctrine to Mr. Fedorowicz's claim that the trial court erred in instructing the jury with respect to both felony murder, a first degree felony, and child abuse homicide, a third degree felony, instead of just the lesser charge. The exercise required an exquisitely detailed dissection of the plain language of the two statutes to determine whether the crime of felony murder contained a single element that would sufficiently distinguish it from the crime of child abuse homicide. Our efforts yielded a distinction that we found to be adequate to keep the two statutes from being "wholly duplicative." *Id.* ¶ 58, 453 P.2d 146. Felony murder predicated on child abuse required the victim to have sustained "serious physical injury," while child abuse homicide required the victim to have suffered only "physical injury." *Id.* ¶ 55, 453 P.2d 146. The legislative inclusion of "serious" was enough, in our view, to make the two crimes "completely dissimilar" and to secure the constitutionality of Mr. Fedorowicz's felony murder conviction. *Id.*

¶ 17 We need not question the correctness of the result in *Fedorowicz* to admit that the *Shondel* doctrine forced us to be more strenuous in our parsing of relevant statutes than we would have preferred. It likely overstates the case to label as "completely dissimilar" a distinction between "serious physical injury" and "physical injury" in the

statutory formulation of two crimes in which the person upon whom the injury, serious or otherwise, is inflicted dies. We saw these exertions through to the end, however, because the *Shondel* doctrine demanded it. The result our efforts yielded, though defensible, was not particularly satisfying.

¶ 18 When the Wyoming Supreme Court was faced with an equal protection challenge to its felony murder and child abuse statutes, the court used the *Batchelder* analytical model instead. *Johnson v. State,* 2003 WY 9, ¶¶ 26–33, 61 P.3d 1234 (Wyo.2003). Under the Wyoming child abuse statute then in effect, child abuse included conduct resulting in death. *Id.* ¶¶ 1, 22. The Wyoming statutes paralleled closely the Utah statutes we confronted in *Fedorowicz.* By following *Batchelder,* however, the Wyoming court avoided the need to perform the close dissection of statutory language that, based on our experience in *Fedorowicz,* the *Shondel* doctrine seemed to require. Instead, the court grounded its holding in the same pronouncement from the *Batchelder* court which we relied on in *Tuttle* that " 'when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants.' " *Johnson,* 2003 WY 9, ¶ 28, 61 P.3d 1234 (quoting *Batchelder,* 442 U.S. at 124, 99 S.Ct. 2198).

### III. FORGING A *SHONDEL/BATCHELDER* RECONCILIATION

¶ 19 Because we conclude that the possession of a controlled substance and the possession of drug paraphernalia statutes do not overlap fully, the *Shondel* doctrine does not apply. This determination is an adequate basis to support our result. We feel constrained, however, to address the fate of the *Shondel* doctrine in the face of its previously unacknowledged conflict with *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

¶ 20 Were we to conclude that Utah's constitutional guarantee of uniform operation of the laws was coextensive with the equal protection guarantees found in the United States Constitution, *Batchelder* would sup-

plant the *Shondel* doctrine. We have, however, determined that article I, section 24 of the Utah Constitution, while embodying the same general principles as the United States Constitution, may, under certain circumstances, provide different and greater protection of individual rights. *See State v. Merrill,* 2005 UT 34, ¶¶ 31, 33–34, 44 n. 4, 114 P.3d 585.

¶ 21 *Batchelder* has drawn criticism for its apparent, although perhaps inadvertent, failure to recognize the potential equal protection mischief that might occur when two criminal statutes are identical in every respect except for their respective penalties. Criminal law professors Wayne LaFave, Jerold Israel, and Nancy King spoke to this flaw in their treatise on criminal procedure:

> In assaying the *Batchelder* reasoning, it is useful to think about three types of situations in which a defendant's conduct may fall within two statutes. They are: (1) where one statute defines a lesser included offense of the other and they carry different penalties (e.g., whoever carries a concealed weapon is guilty of a misdemeanor; a convicted felon who carries a concealed weapon is guilty of a felony); (2) where the statutes overlap and carry different penalties (e.g., possession of a gun by a convicted felon, illegal alien or dishonorably discharged serviceman is a misdemeanor; possession of a gun by a convicted felon, fugitive from justice, or unlawful user of narcotics is a felony); (3) where the statutes are identical (e.g., possession of a gun by a convicted felon is a misdemeanor; possession of a gun by a convicted felon is a felony). The Court in *Batchelder* had before it a situation falling into the second category, but [it] seems to have concluded that the three statutory schemes [were] indistinguishable for purposes of constitutional analysis. But in terms of either the difficulties which are confronted at the legislative level in drafting statutes or in the guidance which is given to a prosecutor by the legislation, the three schemes are markedly different.
>
> The first of the three is certainly unobjectionable. Such provisions are quite common (robbery-armed robbery; bat-

·tery-aggravated battery; joyriding-theft; housebreaking-burglary), and usually are a consequence of a deliberate attempt by the legislature to identify one or more aggravating characteristics which in the judgment of the legislature should ordinarily be viewed as making the lesser crime more serious. They afford guidance to the prosecutor, but—as noted in *Batchelder*—do not foreclose the prosecutor from deciding in a particular case that, notwithstanding the presence of one of the aggravating facts, the defendant will still be prosecuted for the lesser offense.

By contrast, the third of the three is highly objectionable. It is likely to be a consequence of legislative carelessness, and even if it is not such a scheme serves no legitimate purpose. There is nothing at all rational about this kind of statutory scheme, as it provides for different penalties without any effort whatsoever to explain a basis for the difference. It cannot be explained in terms of giving assistance to the prosecutor. Where statutes are identical except for punishment, the prosecutor finds not the slightest shred of guidance. It confers discretion which is totally unfettered and which is totally unnecessary. And thus the Court in *Batchelder* is less than convincing in reasoning that this third category is unobjectionable simply because in other instances, falling into the first category, the need for discretionary judgments by the prosecutor has not been and cannot be totally eliminated.

As for the second of the three categories, it clearly presents a harder case. Here as well, the dilemma is likely to have been created by legislative carelessness ... overlapping statutes are very common at both the federal and state level, and it can hardly be said that in every instance they are a consequence of poor research or inept drafting. Drafting a clear criminal statute and still ensuring that in *no* instance could it cover conduct embraced within any existing criminal statute in that jurisdiction can be a formidable task. (This fact alone may make courts somewhat reluctant to find overlap per se unconstitutional, although the consequence of such a finding, limiting punishment to that under the lesser of the two statutes until such time as the legislature decides what to do about the now-identified overlap, is hardly a cause for alarm.) Moreover, in the overlap scheme the two statutes will at least *sometimes* assist the prosecutor in deciding how to exercise his charging discretion.

Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 13.7(a) (2d ed.2007), *available at* http://www.westlaw. com (internal quotation marks omitted) (emphasis in original). The third type of overlapping statutes recognized by the professors is precisely the statutory scheme to which the *Shondel* doctrine is properly directed, and we conclude that the doctrine should endure to address this unusual and rare phenomenon. In all other circumstances, including those presented by Mr. Williams, we choose to follow *Batchelder*.

¶ 22 Just as the Wyoming Supreme Court's application of *Batchelder* overcame Mr. Johnson's equal protection challenge to his conviction in *Johnson v. State*, 2003 WY 9, 61 P.3d 1234 (Wyo.2003), our application of *Batchelder* to our possession of a controlled substance and possession of drug paraphernalia statutes turns back Mr. Williams' claims. This result is based not only on *Batchelder's* rejection of the unrealized risk of discriminatory prosecution as a reason to limit prosecutorial discretion but also on the *Batchelder* Court's willingness to look to congressional intent to ascertain whether the overlapping statutes were enacted in error or were purposely enacted to be separately and fully enforceable. Following the Supreme Court's lead and undertaking a similar search for the Legislature's intent as implicated by Mr. Williams' case, the result is clear. We have no difficulty distinguishing between a statute directed at the act of possessing a controlled substance and one targeting the possession of drug paraphernalia. The Legislature clearly conveyed its purpose; it intended to enact two separate and independent criminal statutes. *See Batchelder*, 442 U.S. at 121, 99 S.Ct. 2198. That intent, drawn from the plain language of the statutes, is sufficient to immunize the statutes

from attack on equal protection grounds. *Id.* We are also not left with the impression that prosecutors are abandoned to their own predilections when choosing to charge a defendant with one, or both, of misdemeanor paraphernalia possession or felony possession. Prosecutors are not. A prosecutor is foreclosed, for example, from prosecuting for possession of drug paraphernalia a defendant who possesses a controlled substance free of paraphernalia regardless of the prosecutor's sense of mercy or compassion, deserved or otherwise, for the defendant.

## CONCLUSION

¶ 23 After considering and clarifying the proper scope of the *Shondel* doctrine, we conclude that the court of appeals erred in applying the doctrine in Mr. Williams' case. As evidenced by the intention of the Legislature, Utah's felony possession statute and misdemeanor possession of paraphernalia statute do not sufficiently overlap to trigger the protections afforded by the *Shondel* doctrine. The statutes were obviously intended to be fully and separately enforceable. Reversed and remanded.

¶ 24 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING's opinion.