2009 UT App 278

**STATE of Utah, Plaintiff and Appellee,**

v.

**Lonnie C. ARAVE, Defendant and Appellant.**

No. 20070308–CA.

Court of Appeals of Utah.

Sept. 24, 2009.

Randall W. Richards and Dee W. Smith, Ogden, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Kenneth A. Bronston, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges ORME, DAVIS, and McHUGH.

## OPINION

DAVIS, Judge:

¶ 1 Defendant Lonnie C. Arave challenges his conviction of attempted sodomy on a child, a first degree felony, *see* Utah Code Ann. §§ 76–4–101, 76–5–403.1 (2008). We affirm.

## BACKGROUND

¶ 2 On May 10, 2006, Defendant noticed D.B., an eleven-year-old boy, riding his skateboard in the neighborhood where the two resided. After spotting D.B., Defendant got on his bicycle and rode in D.B.'s direction. Defendant caught up with D.B. and stopped about two feet in front of him, blocking his path on the street. Defendant told D.B. he would pay him twenty dollars if D.B. would let Defendant perform oral sex on him. Defendant also told D.B. that he wanted to "lick him from head to toe." After D.B. failed to respond to Defendant's requests, Defendant asked D.B. to not tell anyone what had happened. At some point, Defendant noticed that D.B. was visibly shaken and apologized for "grossing him out." D.B. then rode home on his skateboard, crying, where he told his mother what had happened. D.B.'s mother called the police, and Defendant was apprehended later that same day.

¶ 3 Detective Dewain Sorensen interviewed Defendant about the incident. During the interview, Defendant admitted that he had watched D.B. skateboard up and down his street for approximately one month and that "this one particular kid[, D.B.,] I fixated on a little bit." Defendant also admitted that he had a "habit" of excessive masturbation, that his fantasies had become "a little twist[ed]," and that he "acted out a sick fantasy" in approaching D.B. and making the sexual request.

¶ 4 Defendant was charged with attempted sodomy[1] on a child, a first degree felony. *See id.* A preliminary hearing was held in May 2006, at which point the Defendant and the State stipulated to the facts but did not

---

1. Sodomy on a child is defined as "any sexual act upon or with a child who is under the age of 14, involving the genitals or anus of the actor or the child and the mouth or anus of either person, regardless of the sex of either participant." Utah Code Ann. § 76–5–403.1 (2008).

make argument as to the bindover of Defendant; instead, the trial court requested that the parties brief the issues. Accordingly, in June 2006, the parties presented argument regarding whether Defendant should be boundover on the charge of attempted sodomy on a child. Defendant admitted there was probable cause for the charge of solicitation to commit sodomy on a child, but that there was not probable cause for the charge of attempted sodomy on a child. Unpersuaded, the trial court issued written findings of fact, conclusions of law, and an order binding Defendant over for trial on the charge of attempted sodomy on a child.

¶ 5 The case was tried before a jury on November 28 and 29, 2006. At the close of the State's case, Defendant moved to dismiss the charge of attempted sodomy on a child, claiming that there was insufficient evidence to warrant submitting the charge to the jury. Defendant also moved to limit any conviction to solicitation to commit sodomy on a child under the *Shondel* doctrine, stating that the State had failed to prove any elements beyond that offense. The trial court denied the motions but instructed the jury on both solicitation to commit sodomy on a child and attempted sodomy on a child. The jury ultimately convicted Defendant of the more serious offense of attempted sodomy on a child.

¶ 6 Defendant subsequently filed a motion to arrest judgment,[2] which the trial court denied. In March 2007, Defendant was sentenced to an indeterminate term of three years to life in the Utah State Prison, where he is currently incarcerated. Defendant now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Defendant raises two issues on appeal. First, he contends that solicitation of sodomy on a child, see Utah Code Ann. §§ 76–4–203, 76–5–403.1 (2008), proscribes exactly the same conduct as attempt to commit sodomy on a child, see id. §§ 76–4–101, 76–5–403.1, thus entitling him to the entry of the lesser charge under the *Shondel* doctrine, see *State v. Shondel,* 22 Utah 2d 343,

453 P.2d 146, 148 (1969). Review under the *Shondel* doctrine "focuses on the trial court's legal conclusions, which we review under a correction-of-error standard, according no particular deference to the trial court's ruling." *State v. Kent,* 945 P.2d 145, 146 (Utah Ct.App.1997) (internal quotation marks omitted).

¶ 8 Second, Defendant argues that there was insufficient evidence to send the case to the jury on the more serious charge of attempted sodomy on a child. When a party moves for dismissal based upon a claim of insufficiency of the evidence,

> we apply the same standard used when reviewing a jury verdict.... Stated more fully, if upon reviewing the evidence and all inferences that can be reasonably drawn from it, the court concludes that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt, we will uphold the denial of a motion to dismiss.

*State v. Hamilton,* 2003 UT 22, ¶ 41, 70 P.3d 111 (internal quotation marks and citation omitted).

## ANALYSIS

### I. Applicability of the *Shondel* Doctrine

¶ 9 Defendant claims that the *Shondel* doctrine should apply because the statutes prohibiting attempted sodomy on a child, see Utah Code Ann. §§ 76–4–101, 76–5–403.1, and the statutes proscribing solicitation of sodomy on a child, see id. §§ 76–4–203, 76–5–403.1, contain precisely the same elements. In other words, Defendant contends that the two statutes are "wholly duplicative" because the State is not required to prove any additional element to obtain a conviction for the greater charge of attempted sodomy on a child. We disagree.

¶ 10 The *Shondel* doctrine requires that "criminal laws must be written so that ... the exact same conduct is not subject to different penalties depending upon which of

---

**2.** In his motion to arrest judgment, Defendant reargued his claim that the evidence was insufficient to convict him of attempted sodomy and

that under the *Shondel* doctrine, he was entitled to the entry of the lesser charge of solicitation.

two statutory sections a prosecutor chooses to charge." *State v. Williams,* 2007 UT 98, ¶ 10, 175 P.3d 1029 (omission in original) (internal quotation marks omitted). Thus, the *Shondel* doctrine "applies only when two statutes are *wholly duplicative* as to the elements of the crime." *Id.* ¶ 14 (emphasis added) (internal quotation marks omitted). Further, when analyzing a *Shondel* claim, the conduct of the defendant and the facts of the particular case are irrelevant; instead, "only the content of the statutes matters." *Id.* "Accordingly, to determine if the trial court erred ... we must compare the plain language of [the two statutes in question] to resolve whether ... the elements of each crime are 'wholly duplicative.'" *State v. Fedorowicz,* 2002 UT 67, ¶ 49, 52 P.3d 1194.

¶ 11 In this case, the plain language of the two statutes at issue is not wholly duplicative, and therefore, the *Shondel* doctrine does not apply. The offense of attempted sodomy on a child requires that an actor, with the intent to commit sodomy on a child, engage in conduct constituting a substantial step in furtherance of the offense. *See* Utah Code Ann. §§ 76–4–101, 76–5–403.1. In contrast, the offense of criminal solicitation requires that an actor, with the intent that a felony be committed, solicit *another person* to commit the offense. *See id.* § 76–4–203. In other words, the plain language of the criminal solicitation statute contemplates that criminal solicitation is confined to those situations where a defendant solicits a *third party* to commit a felony—here, sodomy on a child—while attempted sodomy on a child is limited to situations where the defendant directly attempts to commit sodomy on the child victim. Accordingly, we conclude that the statutes are not wholly duplicative and that the *Shondel* doctrine does not apply.

## II. Motion to Dismiss

■ ¶ 12 Defendant next argues that the trial court erred when it denied his motion to dismiss and sent the case to the jury to decide if Defendant was guilty of solicitation of sodomy on a child or attempted sodomy on a child. Specifically, Defendant contends that "there was no evidence presented at trial that [Defendant] took any other substantial step for [his] action to constitute attempt" other than merely "stopping and talking with" D.B.[3]

When evaluating whether the State produced sufficient "believable evidence" to withstand a challenge [to a motion to dismiss] at the close of the State's case ... we apply the same standard used when reviewing a jury verdict.... "[I]f upon reviewing the evidence and all inferences that can be reasonably drawn from it, [an appellate] court concludes that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt," [the court] will uphold the denial of a motion to dismiss.

*Hamilton,* 2003 UT 22, ¶ 41, 70 P.3d 111 (citation omitted).

¶ 13 The State met its burden to produce "believable evidence" of all of the elements of attempted sodomy on a child, which elements are drawn from two statutes, the criminal attempt statute, *see* Utah Code Ann. § 76–4–101 (2008), and the sodomy on a child statute, *see id.* § 76–5–403.1. Under that statutory scheme, an actor is guilty of attempted sodomy on a child if, with the specific intent[4] to commit sodomy on a child under fourteen years old, the actor engages in conduct constituting a substantial step in furtherance of that crime. *See id.* §§ 76–4–101, 76–5–403.1. This approach reflects the definition of criminal attempt "employed in the Model Penal Code, § 5.01, purposed on drawing the line further away from the final act and enlarging the common law concept." *State v. Pearson,* 680 P.2d 406, 408 (Utah 1984). Moreover, this approach focuses on what the actor has *already done,* as opposed to what actions

---

3. Defendant cursorily argues that convicting him for attempted sodomy on these facts violates the First Amendment. We decline to address this argument because it is inadequately briefed, *see Bernat v. Allphin,* 2005 UT 1, ¶ 38, 106 P.3d 707.

4. Defendant does not argue that he lacked the requisite intent under the attempted sodomy statute; indeed, his intent to sodomize D.B. is clear. Instead, Defendant challenges only the sufficiency of the evidence regarding the substantial step element. Accordingly, we only address that element.

remain to be done to complete the crime. *See id.*

¶ 14 With this framework in mind, we do not agree, as the dissent contends, that Defendant was merely "testing the waters" with D.B. to see whether an attempt would be successful, *see infra* ¶ 25. Rather, the facts of this case demonstrate that Defendant took a substantial step in furtherance of his specific intent to sodomize D.B., and had D.B. "consented," the sodomy would have occurred. The undisputed facts presented at trial are as follows: (1) Defendant spotted eleven-year-old [5] D.B. riding his skateboard in the neighborhood where the two resided; (2) Defendant then got on his bicycle and specifically rode in D.B.'s direction, where he caught up with D.B. and stopped two feet in front of him, essentially trapping him in a physical space on the street; (3) Defendant told D.B. he would pay him twenty dollars if D.B. would let Defendant perform oral sex on him; (4) Defendant then told D.B. that he wanted to "lick him from head to toe"; (5) D.B. declined Defendant's offers, after which Defendant, perhaps worried about the potential repercussions of his actions, apologized for "grossing him out"; and (6) after the incident, D.B., who was visibly shaken, rode home on his skateboard crying. These facts, viewed in a light most favorable to the verdict of the jury, *see State v. Hamilton*, 2003 UT 22, ¶ 2, 70 P.3d 111, provide sufficient believable evidence on each of the elements of attempted sodomy on a child. Thus, we conclude it was not error for the trial court to send the charge to the jury.

¶ 15 Moreover, at the close of all evidence in the case, the trial court specifically instructed the jury on the elements of *both* solicitation to commit sodomy on a child and attempt to commit sodomy on a child. After receiving both instructions, the jury nonetheless concluded that Defendant was guilty of the more serious charge of attempted sodomy. The jury's verdict, especially where the jury was given the option to convict Defendant of the lesser charge of solicitation

to commit sodomy, lends further weight to the trial court's denial of Defendant's motion to dismiss. *Cf. State v. Widdison*, 2000 UT App 185, ¶ 59, 4 P.3d 100 ("[W]e conclude the trial court properly denied defendant's motion to dismiss. Because we conclude that sufficient evidence supported the jury's verdict, we necessarily conclude that the evidence was sufficient to support the trial court's denial of defendant's motion to dismiss." (internal quotation marks omitted)).

¶ 16 In light of the foregoing, and after reviewing the evidence presented as well as the reasonable inferences that can be drawn from it, we "conclude[ ] that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *Hamilton*, 2003 UT 22, ¶ 41, 70 P.3d 111 (internal quotation marks omitted). We will not improperly substitute our judgment for that of the jury and, accordingly, we affirm the trial court's denial of Defendant's motion to dismiss.

## CONCLUSION

¶ 17 We determine that the plain language of the statutes at issue is not wholly duplicative and, therefore, the *Shondel* doctrine is inapplicable. We also determine that there was sufficient evidence that Defendant took a substantial step toward the commission of sodomy on a child to send the attempt charge to the jury, and that it is inappropriate for this court to substitute its judgment for that of the jury. Accordingly, we affirm the trial court's decision in all respects.

¶ 18 I CONCUR: CAROLYN B. McHUGH, Judge.

ORME, Judge (dissenting):

¶ 19 Defendant's actions in this case fall short of an attempt to commit sodomy. What he did seems more like a pre-attempt, a testing of the waters to see if attempting an act of sodomy would likely be worthwhile.

---

5. Although we decline to focus on the seriousness of the offense because of D.B.'s age, his age is important evidence of whether Defendant took a substantial step toward commission of sodomy. An eleven-year-old child is much less likely than an adult to have the maturity, power, and presence of mind necessary to refuse an adult's inappropriate sexual advances and break contact with the perpetrator before any abuse occurs.

Upon being rebuffed, Defendant went his way without so much as having touched D.B. I believe that more is required to constitute a "substantial step" toward committing the crime, such as pulling the victim from his skateboard, trying to undo the victim's belt buckle, making the victim take the $20, or leading the victim into some bushes or toward Defendant's house. I disagree that a mere statement of an interest in committing a crime, without more, could possibly constitute a *substantial step* toward commission of the crime.

¶ 20 In any of these scenarios, even if the victim then ran away and nothing more happened, I would conclude that Defendant attempted sodomy because any of those overt acts would be a substantial step toward commission of the crime. Here, regardless of what Defendant had been thinking about for however long, all he did was ask the victim— in a public place—if he could perform sexual acts on him for $20.[1] When D.B. declined the offer, Defendant apologized and they went their separate ways.

¶ 21 As noted in the lead opinion, Arave does not quibble about the intent element of attempted sodomy and only challenges the sufficiency of the evidence with regard to the "substantial step" element. He claims that his mere request to perform oral sex on D.B. did not constitute a substantial step towards sodomy because it was only a preparatory act, a mere testing of the waters to see if an attempt would likely be successful. The State, on the other hand, argues that Arave's fantasizing about D.B. for a month, supposedly blocking D.B.'s way with his bike, trying to persuade D.B. with twenty dollars, and the actual request, are all facts supporting the conclusion that Arave took a substantial step towards commission of sodomy on a child.[2]

---

1. The lead opinion claims that defendant "block[ed] [D.B.'s] path on the street" and "trapp[ed] him in a physical space on the street." While this phraseology appears in the State's brief, there is no support for either claim in the record.

2. The State relies on several cases from other jurisdictions, which cases the State argues stand for the point that a request to commit a sexual act plus a slight act, or in some instances a request alone, are actions that constitute a substantial step towards commission of the sexual act. These cases are not persuasive, however, in light of Utah's own jurisprudence concerning what constitutes an attempt. Moreover, the facts in the cases relied on by the State involve more in the way of a substantial step than the facts of this case because those cases involved multiple incidents, multiple requests, or more aggressive efforts at persuasion on the part of the defendants. *See Arizona v. McMillen*, 154 Ariz. 322, 742 P.2d 823, 823–24 (Ct.App.1987) (concluding evidence was sufficient to support an attempted kidnaping charge when it showed the defendant, wearing a ski mask, asked a child to enter his truck; for two days the defendant had been following and taking pictures of children from the truck; and the defendant told an officer that his actions were not illegal and " 'turned him on' "), *overruled on other grounds by Rainwater v. Arizona*, 189 Ariz. 367, 943 P.2d 727, 727, 729 (1997) (resolving conflict between Arizona's appellate courts on what class of felony attempted kidnaping is); *Arizona v. Fristoe*, 135 Ariz. 25, 658 P.2d 825, 827, 830–31 (Ct.App.1982) (holding evidence supported attempted oral sex with minors when it showed that, on the same day, the defendant asked a fifteen-year-old girl if he could kiss her between the legs in exchange for five dollars; then in a second instance, repeated the same request to two eleven-year-old girls and then returned to the eleven-year-old girls offering twenty dollars instead; and in a third instance, asking another eleven-year-old girl if he could "put his head between [the girl's] legs and take a picture"); *Ward v. Indiana*, 528 N.E.2d 52, 52–53, 55 (Ind.1988) (holding evidence supported attempted molestation of a child when it showed the defendant followed a boy on a street; asked the boy three times if he could "perform fellatio on him"; told the boy "the Sheriff would get [the boy] in trouble and that the Sheriff was a 'pervert' "; and the defendant urged that the act take place immediately); *Van Bell v. Nevada*, 105 Nev. 352, 775 P.2d 1273, 1274–76 (1989) (per curiam) (determining evidence supported attempted sexual assault when it showed the defendant "paid a woman a $100 finder's fee to procure a young girl for sexual intercourse; negotiated with an undercover officer for the purchase of a young girl; offered the undercover officer $150 to have a child furnished to him; chose a young girl, represented to be five or six years of age, from a collection of photographs supplied by the undercover officer; and prepared for sexual intercourse with the young girl by arranging for a room and purchasing [V]aseline to use as a lubricant"); *New Jersey v. Perez*, 177 N.J. 540, 832 A.2d 303, 306–07, 311–12 (2003) (holding the evidence supported attempted child endangerment when it showed that the defendant, in one incident, drove next to a girl walking to school and offered her a ride twice; when in a second incident, the defendant stopped his car as the same girl approached on a bicycle, asked if the girl remembered him and motioned for her to come towards him; and when the defendant had fantasized about a date and become obsessed

¶ 22 It is clear that Arave's actions fall short of an attempt to commit sodomy because he did not take a "substantial step" as contemplated by our jurisprudence. Our case law recognizes that a substantial step is a tangible, meaningful, or significant step towards commission of a crime that "transcends intent," *State v. Jones*, 2002 UT 1, ¶ 9, 44 P.3d 658 (citation and internal quotation marks omitted). As the Utah Supreme Court has explained, " '[i]n establishing the nexus between intent and act it must be borne in mind that an attempt transcends intent, yet fails to culminate in its planned accomplishment.' " *Id.* (quoting *State v. Castonguay*, 663 P.2d 1323, 1326 (Utah 1983)). " 'When we say that a man attempted to do a given wrong, we mean that he intended to do specifically it, and proceeded a certain way in the doing. The intent in the mind covers the thing in full; the act covers it only in part.' " *Castonguay*, 663 P.2d at 1326 (citation omitted).[3]

¶ 23 Thus, in *State v. Pearson*, 680 P.2d 406 (Utah 1984) (per curiam), our Supreme Court affirmed a conviction for attempted burglary and robbery—not of someone who was merely driving toward the crime scene with larceny on his mind—but rather of someone riding in a car on his way to a home where he intended to commit such crimes, accompanied by cohorts he recruited, duct tape and gloves he furnished, and a cap pistol he provided. *See id.* at 407–08. Also instructive is the case of *Tillman v. Cook*, 855 P.2d 211 (Utah 1993). In that case, the Utah Supreme Court determined that an aggravating circumstance of attempted aggravated arson existed with regard to the defendant's first degree murder conviction. *See id.* at 219–20. The court held the lighting of a mattress on fire "constituted a substantial step in the commission of aggravated arson" when the evidence supported that the defendant lit the mattress with the intent to light the entire habitable structure on fire. *Id.* at 220.

¶ 24 *State v. Johnson*, 821 P.2d 1150 (Utah 1991),[4] is particularly illustrative of the difficulty with the majority's analysis. In that case a wife "was charged with three separate counts of attempted first degree murder of her husband" when she tried to kill him by overdosing him with various illicit substances. *Id.* at 1153. On one count, the *Johnson* court determined that the purchase of counterfeit " 'crank'—a street name for methamphetamine," *id.* at 1154—did not constitute a substantial step towards committing the murder, because it did not go beyond "mere preparation." *Id.* at 1157. The Court

with the girl); *Oregon v. Walters*, 311 Or. 80, 804 P.2d 1164, 1165–68 (1991) (en banc) (concluding the evidence supported that a substantial step was taken to kidnap, rape, and sodomize a thirteen-year-old girl, when it showed that the defendant asked the girl to help him find his dog; offered her money in increasing amounts; offered the girl a ride home; and then followed the girl, who rode her bicycle home, where he stayed to browse items at her family's garage sale and blurted out to the girl's mother that he had a girlfriend), *modified by Walters v. Maass*, 45 F.3d 1355, 1359–60 (9th Cir.1995) (determining evidence did not support attempted rape and sodomy charges, but did support attempted kidnaping charge); *Oregon v. Rinkin*, 141 Or.App. 355, 917 P.2d 1035, 1037, 1041–42 (1996) (holding evidence supported a substantial step towards sodomy on a child when it showed that the defendant and the victim had four or five encounters, where defendant encouraged the boy to skip school and do things his parents would not allow, on one occasion stating he would give the boy free karate lessons at his apartment if the boy came by himself, and on another offering the boy "a Playboy [magazine] if he would come to defendant's apartment"); *Tennessee v. Fowler*, 3 S.W.3d 910, 910–12 (Tenn.1999) (determining evidence supported attempted statutory rape when it showed the defendant approached an undercover officer at a rest area, stating that he wanted "a young boy who was willing to run away from home and live with him"; the officer returned with a nineteen-year-old dressed as a fourteen-year-old boy; the defendant indicated he wanted sex with the boy; and the defendant made out a check for a finder's fee).

3. *State v. Castonguay*, 663 P.2d 1323 (Utah 1983), was decided under essentially the same statutory requirements that are applicable in this case. *Compare id.* at 1325 *with* Utah Code Ann. § 76–4–101 (2008).

4. The State takes issue with the holding in *Johnson* because the *Johnson* court used "preparation" analysis and cited a common law attempt case. *See generally State v. Johnson*, 821 P.2d 1150, 1156–57 (Utah 1991). The State, however, stated in its brief that it "does not dispute that conduct exhibiting mere preparation, as it might pertain to [the instant] case, cannot effectively constitute an attempt."

went on to determine, however, that administering oxalic acid and heroin to her husband were substantial steps for purposes of the other two attempted murder counts. *See id.* at 1158, 1160. And a number of other Utah cases show the need for more than just talk to establish an attempt crime. *See State v. Hickman*, 779 P.2d 670, 671–72 (Utah 1989) (per curiam) (refusing to set aside guilty pleas to aggravated robbery because the "[d]efendants' entry into the home of the victims with sawed-off shotguns constituted the attempt, since it was a substantial step towards the commission of the offense") (citation and internal quotation marks omitted); *State v. Cantu*, 750 P.2d 591, 593–94 (Utah 1988) (determining that evidence supported an aggravated robbery conviction when it showed the "defendant accosted the victim with a knife and club and demanded to know where she kept her silver and gold," and such action "was a substantial step toward commission of the offense") (citation and internal quotation marks omitted); *State v. Lemons*, 844 P.2d 378, 381 & n. 3 (Utah Ct.App.1992) (declining to reach the merits of the issue due to a failure to marshal but stating that even if the court had considered the merits, "[b]ased on [a witness's] testimony that defendant aimed the shotgun for five to seven seconds before firing at [the victim,] a reasonable jury could conclude that defendant took a substantial step toward intentionally causing the death of [the victim]"), *cert. denied*, 857 P.2d 948 (Utah 1993). In all these cases, the defendants' acts clearly transcended their mere intent to commit the crimes and their actions were in substantial furtherance of consummating the crimes.

¶ 25 Arave approached D.B. and asked if D.B. would allow Arave to perform oral sex on him in exchange for some money, but Arave never threatened D.B., never moved to lay a hand on him, and never tried to restrain him. Upon being rebuffed by D.B., Arave went his way without so much as having touched or attempting to restrain D.B., and even apologized for making his request. When compared to the substantial steps treated in our case law, Arave's actions seem more like a pre-attempt, or a testing of the waters,[5] to see if attempting an act of sodomy would likely be worthwhile. Under our attempt jurisprudence, more is required to show there was a substantial step towards attempting sodomy on a child, such as pulling a victim from his skateboard, trying to undo the victim's belt buckle, making the victim take the twenty dollars, leading the victim into some bushes or toward a defendant's house, threatening the victim if he did not agree to submit to the act, manipulating the victim into compliance, actually trapping the victim,[6] or aggressively trying to persuade the victim.

---

**5.** The opinion in *State v. Ansari*, 2004 UT App 326, 100 P.3d 231, evaluated the "differences between Internet enticement and other inchoate crimes." *Id.* ¶ 17. Although not squarely on point, its discussion supports that there is a distinction between a "testing of the waters" and an actual attempt:

> [T]he crime of Internet enticement would be more appropriate in a case where, as here, a defendant solicits sex from an undercover police officer on the Internet believing he is communicating with a minor. In such a case, attempt, conspiracy, and solicitation may be difficult to prove because the State must establish the defendant's actions are "strongly corroborative" of an intent to commit a felony or involve an "overt act." The charge of Internet enticement would be more appropriate because it does not require "strong corroboration" of intent.
>
> In contrast, the defendant may contact a minor via the Internet, meet the minor, and be on the verge of consummating a felonious sexual act with the minor before being stopped by police. In that case, the higher crime of attempt, for example, would be appropriate because the State could probably prove "strong corroboration" of an intent to commit the underlying felony.
>
> In sum, we conclude that although Internet enticement and other inchoate crimes may interlock, they do so in a way that allows the State to prosecute efforts to seduce children at different stages. If the predator is caught early in his effort, the State may charge Internet enticement, and if caught after the crime had developed, the State may have evidence to charge the greater crimes of attempt, conspiracy, and solicitation.

*Id.* ¶¶ 19–21 (citations omitted).

**6.** The State makes much of the fact that Arave "blocked" D.B.'s path and claims that Arave essentially "trapped" D.B. However, even though Arave stopped his bike in front of D.B., this action did not prevent D.B. from running away in any other direction, as he soon did, and the evidence does not show that Arave tried to prevent D.B. from leaving. The State also focuses on Arave's offer of twenty dollars as an at-

¶26 In any of these scenarios, even if the victim was able to run away, or a third party interrupted the perpetration of the crime, it would seem like a defendant actually attempted sodomy because any of those overt acts would be a substantial step towards commission of the crime. Here, in contrast, all Arave did was ask. When the victim refused, Arave apologized, and D.B. went home without any hindrance from Arave. Therefore, the trial court erred in denying Arave's motion to dismiss because the evidence did not support, beyond a reasonable doubt, that Arave took a substantial step towards commission of the crime of sodomy on a child. *See generally State v. Hamilton*, 2003 UT 22, ¶41, 70 P.3d 111.[7]

¶27 After reviewing the evidence and the reasonable inferences that can be drawn from it, it is clear that Arave's request that

D.B. allow Arave to sodomize D.B. in exchange for twenty dollars did not, under the circumstances of this case, constitute attempted sodomy on a child. The request was simply not a substantial step towards commission of the crime. As Arave acknowledges his actions were criminal, and he specifically requests the case be remanded for the trial court to enter a conviction of solicitation to commit sodomy on a child, that request should be granted and the case remanded for that purpose.[8]

tempt to persuade D.B. to comply. In my view, Arave's efforts at verbal persuasion, including offering a financial incentive, clearly did not constitute a substantial step toward sodomy.

7. Sound policy considerations further bolster my position that a substantial step toward commission of the crime, beyond the mere hope or intention to commit it, is required for attempt. There is little incentive for perverts and pedophiles to exercise a measure of self-control, as Arave did in this case, if someone who asks about the possibility of sodomy for hire and then goes his way when he is rebuffed will be guilty of precisely the same crime as someone who grabs a child, holds the child's arms with one hand, lowers the child's pants with the other, and gets his open mouth within an inch of the child's private parts before losing his nerve or being interrupted.

8. The State concurs in the propriety of such a remand for this purpose, in the event it is deter-

mined the evidence does not establish there was an actual attempt. It should be pointed out that the difference between the two statutes permitting this resolution would not be available to Arave had he committed his crime more recently. After 2006, when Arave committed his crime, the solicitation statute was amended to make solicitation of sodomy on a child a first degree felony, *see* Utah Code Ann. § 76–4–204(1)(d)(iii) (2008), instead of a second degree felony as it was at the time of Arave's actions, *see id.* § 76–4–204(2) (2003). Arave's argument and request to reduce his conviction to a second degree felony for solicitation of sodomy on a child is plausible only because of the differences that existed in the statutes at the time of his actions. Under the current statutes, both attempted sodomy on a child, *see id.* § 76–4–102(1)(d)(iii) (2008), and solicitation of sodomy on a child, *see id.* § 76–4–204(1)(d)(iii), are first degree felonies.