2010 UT App 98

**STATE of Utah, Plaintiff and Appellant,**

v.

**Frank C. COBLE, Defendant and Appellee.**

**No. 20080866–CA.**

Court of Appeals of Utah.

April 22, 2010.

Mark L. Shurtleff and Karen A. Klucznik, Salt Lake City, for Appellant.

Joseph Jardine and David L. Crowley, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 The State brings this interlocutory appeal from the district court's bindover order reducing the charge against defendant Frank C. Coble from distributing pornographic material, a third degree felony, *see* Utah Code Ann. § 76–10–1204 (Supp.2009), to lewdness, a misdemeanor, *see id.* § 76–9–702. The district court concluded that, under the circumstances, the felony pornography distribution charge was barred by the doctrine enunciated in *State v. Shondel,* 22 Utah 2d 343, 453 P.2d 146 (1969), limiting the prosecution of a defendant to the less serious of two crimes with identical elements (the *Shondel* doctrine). We reverse and remand this matter for further proceedings.

## BACKGROUND

¶ 2 In December 2006, Coble was online in an internet chat room. At some point, Coble initiated a private chat with an individual he believed to be a fourteen-year-old girl, but who was actually an undercover police offi-

cer. During the course of the chat, Coble activated the web camera attached to his computer, focused it on his genitalia, and began masturbating. The web camera produced a live image that was transmitted to the undercover officer, who then used computer software to record still photographs of the live images. Based on these facts, the State charged Coble with distributing pornographic material.

¶3 The district court held a preliminary hearing in February 2008. Before the district court ruled on whether to bind Coble over as charged, Coble submitted a memorandum arguing, among other things, that (1) the distribution of pornography statute excluded private, one-on-one conversations or interactions; (2) the live web camera images were not "material" as contemplated by Utah Code section 76–10–1201, see Utah Code Ann. § 76–10–1201(7) (2008); (3) Coble's actions did not constitute a public performance under Utah Code section 76–10–1204(1)(f) because the alleged conduct occurred in a private internet chat room, which is not a "public place," see id. § 76–10–1204(1)(f) (Supp. 2009); and (4) Coble was entitled to have the charge reduced to lewdness under the Shondel doctrine. In response, the State filed a motion for bindover on the charge of distributing pornographic material.

¶4 After hearing arguments on the motions and issuing an oral ruling, the district court issued written findings of fact, conclusions of law, and an order. The district court concluded that "[a] web camera's capture of a person masturbating comes within the definition of 'material' for purposes of Utah Code [section] 76–10–1201(7)." The district court then determined that Coble's "alleged act of exhibiting himself to one other person via a web camera over the Internet in a private chat room while in the act of masturbation may come within the definition of distributing pornographic material for purposes of Utah Code [section] 76–10–1204." However, the district court also concluded that Coble's alleged act "comes within the definition of lewdness for purposes of Utah Code [section] 76–9–702." Accordingly, the district court determined that the Shondel doctrine was applicable because "the elements of Utah Code [section] 76–10–1204, distribution of pornographic material, and the elements of Utah Code [section] 76–9–702, lewdness, as applied to the alleged facts of this case, are wholly duplicative." Based on these conclusions, the district court denied the State's motion for bindover on the felony charge and instead ruled that the prosecution could proceed only on a charge of misdemeanor lewdness.

¶5 The State petitioned for interlocutory appeal of the district court's bindover order on the Shondel issue, and we granted the State's petition. However, Coble did not seek interlocutory review of the district court's decision that a webcam feed constituted "material" for purposes of the pornography distribution statute, nor did he petition for review of any other express or implied rejection of his arguments by the district court. Coble also did not initiate a cross-appeal upon the granting of the State's petition.

### ISSUE AND STANDARD OF REVIEW

■ ¶6 The only issue properly before this court on appeal is the Shondel issue raised by the State. The State argues that the district court erred in applying the Shondel doctrine to reduce Coble's felony pornography distribution charge to one of misdemeanor lewdness because the elements of the two crimes are not identical. "Our review under the Shondel rule focuses on the trial court's legal conclusions, which we review under a correction-of-error standard, according no particular deference to the trial court's ruling." State v. Green, 2000 UT App 33, ¶5, 995 P.2d 1250 (internal quotation marks omitted).

### ANALYSIS

■ ¶7 Coble was charged with distributing pornographic material under Utah Code section 76–10–1204 when he transmitted a live web camera image of himself masturbating to another individual in a private chat room on the internet. The relevant portions of section 76–10–1204 as it applies to this case provide as follows: "A person is guilty of distributing pornographic material when the person knowingly ... distributes or of-

fers to distribute, or exhibits or offers to exhibit, any pornographic material to others. . . ." Utah Code Ann. § 76–10–1204(1)(c) (Supp.2009). Thus, to be convicted of distributing pornographic material, Coble must have (1) knowingly; (2) distributed or exhibited, *see id.* § 76–10–1201(3)–(4) (2008); (3) to others; (4) material, *see id.* § 76–10–1201(7); (5) that was pornographic, *see id.* § 76–10–1203(1). By contrast, the crime of lewdness is committed when a defendant performs any of a number of enumerated acts, including masturbation, "in a public place or under circumstances which the person should know will likely cause affront or alarm to, on, or in the presence of another who is 14 years of age or older." *See id.* § 76–9–702(1) (Supp.2009).

¶ 8 Under the *Shondel* doctrine, "where there is doubt or uncertainty as to which of two punishments is applicable to an offense an accused is entitled to the benefit of the lesser." *State v. Shondel,* 22 Utah 2d 343, 453 P.2d 146, 148 (1969). However, subsequent cases have made clear that application of the *Shondel* doctrine is limited to cases where the elements of two different crimes are truly identical. "[I]f one or both of the crimes at issue require[ ] proof of some fact or element not required to establish the other, the statutes do not criminalize identical conduct and the State can charge an individual with the crime carrying the higher classification or more severe sentence." *State v. Fedorowicz,* 2002 UT 67, ¶ 47, 52 P.3d 1194 (alteration in original) (internal quotation marks omitted). "Unlike the merger doctrine, the *Shondel* doctrine treats as irrelevant the conduct of a particular defendant; only the content of the statutes matters." *State v. Williams,* 2007 UT 98, ¶ 14, 175 P.3d 1029.

¶ 9 Examining the statutory elements at issue in this case, it is clear that, at the very least, the pornography distribution statute differs from the lewdness statute by requiring the State to prove that the material or performance underlying the charge is pornographic, as opposed to merely lewd. *Compare* Utah Code Ann. § 76–10–1203(1) (defining "pornographic" as appealing to a prurient interest in sex under community standards,

being patently offensive, and lacking other value), *with id.* § 76–9–702(1) (Supp.2009) (enumerating lewd acts including acts of sexual intercourse or sodomy, exposure, masturbation, and "any other act[s] of lewdness"). In this case, a lewdness conviction would require only proof that Coble masturbated under circumstances that violated the lewdness statute. While those same circumstances might also establish certain elements of the pornography distribution statute, the State would additionally have to prove that the webcam feed of Coble masturbating was pornographic, i.e., that it appealed to a prurient interest in sex under community standards, was patently offensive, and lacked other value, *see id.* § 76–10–1203(1) (2008). Accordingly, because the legislature has chosen to define the two offenses differently, the *Shondel* doctrine is not applicable here and the district court's order reducing Coble's charge must be reversed.

¶ 10 Coble dedicates a substantial amount of his appellate briefing to arguing various theories as to why his private, non-commercial webcam feed cannot constitute the distribution of pornography under Utah Code section 76–10–1204. For example, Coble argues that the live nature of the webcam feed renders it a private "performance" under the statute rather than "material," an argument expressly rejected by the district court. These arguments are not, however, properly before us because Coble failed to bring them either by way of a cross-appeal or by separate petition for interlocutory appeal. *See generally State v. South,* 924 P.2d 354, 355–57 (Utah 1996) (applying the doctrine enunciated in *Langnes v. Green,* 282 U.S. 531, 538–39, 51 S.Ct. 243, 75 L.Ed. 520 (1931)).

[Litigants must] cross-appeal or cross-petition if they wish to attack a judgment of a lower court for the purpose of enlarging their own rights or lessening the rights of their opponent. Conversely, if appellees or respondents merely desire the affirmance of the lower court's judgment, they need not, and should not, cross-appeal or cross-petition. "The practical justification for the rule is that a party satisfied with the action of a lower court should not have

to appeal from it in order to defend a judgment in his or her favor on any ground no matter what an adversary does." Nor should a party be allowed to employ its adversary's appeal or petition as a vehicle to gain a greater benefit than that granted below.

*Id.* at 355–56 (citations omitted).

¶ 11 Coble's arguments go far beyond merely defending the district court's decision applying the *Shondel* doctrine. Indeed, if successful, Coble's arguments would result in a ruling from this court precluding the State from prosecuting at least some webcam feeds—including Coble's—as the distribution of pornography. Such a result would constitute "enlarging [Coble's] own rights or lessening the rights of [the State]," *see id.* at 355, and Coble was therefore required to pursue that result by way of his own interlocutory appeal or cross-appeal. Having failed to do so, Coble is not entitled to have us consider his arguments that his alleged actions cannot be punished as the distribution of pornography.[1]

1. The Utah Supreme Court has also held that it is not appropriate for this court to reverse a trial court's decision on alternative grounds, i.e., grounds other than those raised by an appealing party. *See State v. Robison,* 2006 UT 65, ¶¶ 20–22, 147 P.3d 448; *cf. Bailey v. Bayles,* 2002 UT 58, ¶ 13, 52 P.3d 1158 (stating than an appellate court may *affirm* the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record). Here, the only ground for reversal urged by the State was the district court's misapplication of the *Shondel* doctrine. Coble's arguments cannot be considered as alternate grounds for affirming the district court's bindover order because success on those arguments would necessarily require a complete dismissal of the pornography distribution charge and reversal of the portion of the order allowing the prosecution to proceed on the uncharged count of lewdness. *Cf. State v. South,* 924 P.2d 354, 357 (Utah 1996) ("The State merely offered another line of reasoning which, if accepted, would result in *precisely* the same outcome as that originally granted by the trial court ...." (emphasis added)).

2. Although we do not address Coble's arguments about the proper interpretation and application of the pornography distribution statute as it applies to private webcam feeds, this opinion is not intended to preclude Coble from raising those same arguments on a direct appeal or seeking to raise them by petition for interlocutory appeal. We also do not mean to discourage further development of these issues in the district court, par-

## CONCLUSION

¶ 12 The district court erred in reducing the charge against Coble from distributing pornographic material to lewdness under the *Shondel* doctrine because the elements of those two crimes are not identical. Accordingly, we reverse the district court's order and remand for further proceedings under the original charge.[2]

¶ 13 I CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge.

DAVIS, Presiding Judge (dissenting):

¶ 14 I have no argument with the majority's reasoning regarding the district court's analysis of the *Shondel* doctrine or the effect of *State v. South,* 924 P.2d 354 (Utah 1996), on our ability to reach the merits of Coble's argument that the live web camera images are not "material" under the statute, *see* Utah Code Ann. § 76–10–1204 (Supp.2009), based on Coble's failure to file a cross-appeal.[1] Notwithstanding, I respectfully dis-

ticularly to the extent that such development might include factual determinations relating to the nature of webcam technology for purposes of satisfying the "material," "distribut[ion]," and "exhibit[ion]" elements of Utah Code section 76–10–1204. *See* Utah Code Ann. § 76–10–1204(1)(c) (Supp.2009).

1. The majority also cites *State v. Robison,* 2006 UT 65, 147 P.3d 448, for the proposition "that it is not appropriate for this court to reverse a trial court's decision on alternative grounds, i.e., grounds other than those raised by an appealing party." *Supra,* ¶ 11 n. 1. While this general concept is true, *Robison* is less than helpful here because it was specifically decided on the basis that the appellant had failed to raise the issue on appeal and that the court of appeals had, on its own initiative, "revers[ed] the district court by invoking new law based on a theory that ha[d] not been raised by the parties," *Robison,* 2006 UT 65, ¶ 18, 147 P.3d 448, and was thus "never subjected to the rigors of the adversarial process," *id.* ¶ 16. In this case, there is no question that Coble preserved his argument before the district court and also raised and argued it on appeal. Indeed, prior to the district court ruling on whether to bind Coble over as charged, Coble submitted a memorandum arguing, among other things, that the live web camera images are not "material" as defined by Utah Code section 76–10–1201, *see* Utah Code Ann. § 76–10–1201(7) (2008). Moreover, Coble raised and briefed the same argument on appeal, and the State provid-

sent because this court " 'has inherent authority to consider issues which the parties have not raised if doing so is necessary to a proper decision.' " *Kaiserman Assocs., Inc. v. Francis Town*, 977 P.2d 462, 464 (Utah 1998) (quoting *Falk v. Keene Corp.*, 113 Wash.2d 645, 782 P.2d 974, 982 (1989)); *cf. Hall v. American Nat'l Plastics Inc.*, 73 Wash.2d 203, 437 P.2d 693, 694 (1968) ("It may be urged that we have disposed of the appeal on points and issues not raised by either party and that this has deprived the appellant of his rights on appeal. But courts of review are not obliged to decide all issues raised by the parties, but only those which are determinative. *Courts frequently decide crucial issues which the parties themselves fail to present.*" (emphasis added)). Indeed, "an overlooked or abandoned argument should not compel an erroneous result. We should not be forced to ignore the law just because the parties have not ... pursued obvious arguments." *Kaiserman*, 977 P.2d at 464. In this case, not only was the issue preserved below, but it was also argued on appeal; Coble's only error was that he failed to file a cross-appeal.

¶ 15 Moreover, "[t]he fundamental purpose served by the preliminary examination is the ferreting out of groundless and improvident prosecutions," *State v. Virgin*, 2006 UT 29, ¶ 20, 137 P.3d 787 (internal quotation marks omitted), thus "protecting the accused from the degradation and expense of a wrongful trial," *State v. Rogers*, 2006 UT 85, ¶ 8, 151 P.3d 171. Our reversal of the district court's decision to bind Coble over on the lesser included offense of misdemeanor lewdness results in Coble now being bound over to stand trial on a felony charge of distributing pornographic material. In light of the primary purpose of a preliminary hearing, that is, permitting Coble to avoid trial if the State does not have enough evidence as to each of the elements of the alleged crime, this court has both the authority and the affirmative duty to get the law "right," *see Kaiserman*, 977 P.2d at 464, even if the parties have gotten it wrong. This is especially true where the district court, in my view, erroneously concluded, as a matter of law, that the live web camera image constituted "material" for the purposes of the distributing pornographic material statute, *see* Utah Code Ann. § 76–10–1204 (Supp.2009). Accordingly, I would address the merits of the district court's erroneous legal conclusion even though Coble did not properly pursue the argument through a cross-appeal.

¶ 16 Coble was charged with distributing pornographic material under Utah Code section 76–10–1204 when he transmitted to another individual in a private chat room on the internet a live web camera image of himself masturbating. The relevant portions of section 76–10–1204 provide as follows:

(1) A person is guilty of distributing pornographic material when the person knowingly:

. . .

(c) distributes or offers to distribute, or exhibits or offers to exhibit, any pornographic material to others; [or]

. . .

(f) presents or directs a pornographic performance in any public place or any place exposed to public view or participates in that portion of the performance which makes it pornographic.[2]

*Id.* § 76–10–1204(1).

"Material" means anything printed or written or any picture, drawing, photograph, motion picture, or pictorial representation, or any statue or other figure, or any recording or transcription, or any mechanical, chemical, or electrical reproduction, or anything which is or may be used as a

---

ed four pages of analysis in response to Coble's argument.

**2.** The charging document does not specify which subsection of the statute applies to Coble. We note, however, that at oral argument on the motions before the district court, the State explained that "under the State's theory we've got two possible subsections of [section 76–10–1204] that could—that apply. One is subsection

(c).... Second, [subsection] (f) ... also applies." On the other hand, Coble argued at oral argument on the motions before the district court that "subsection (f) cannot apply to this case" because "this did not occur in a public place," and also asserts on appeal that "[t]he only part of [section] 76–10–1204 that has possible application ... is subsection (c)."

means of communication. Material includes undeveloped photographs, molds, printing plates, and other latent representational objects.

*Id.* § 76–10–1201(7) (2008). And pursuant to Utah Code section 76–10–1203, material is "pornographic" if

(a) The average person, applying contemporary community standards, finds that, taken as a whole, it appeals to prurient interest in sex;

(b) It is patently offensive in the description or depiction of nudity, sexual conduct, sexual excitement, sado-masochistic abuse, or excretion; and

(c) Taken as a whole it does not have serious literary, artistic, political or scientific value.

*Id.* § 76–10–1203(1). Thus, to be properly charged with distributing pornographic material, there must be evidence that Coble (1) knowingly, (2) distributed or exhibited, (3) to others, (4) material, (5) that was pornographic. *See id.* § 76–10–1204(1).

¶ 17 As to the fourth element, the district court concluded that "[a] web camera's capture of a person masturbating comes within the definition of 'material' for purposes of Utah Code [section] 76–10–1201(7)."[3] I disagree. When interpreting a statute, we look first to the statute's plain language. *See State v. Jeffries,* 2009 UT 57, ¶ 17, 217 P.3d 265. In doing so, "[w]e read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Miller v. Weaver,* 2003 UT 12, ¶ 12, 66 P.3d 592. According to the plain language of the statute, material includes only those items that are tangible, concrete, and can occupy a physical space. *See* Utah

Code Ann. § 76–10–1201(7) (defining material to include such items as "picture[s], drawing[s], [and] photograph[s], as well as undeveloped photographs, molds, printing plates, and other latent representational *objects*" (emphasis added)). A live web camera image is not tangible, nor does it occupy a concrete physical space; in fact, there is no evidence presented by the parties that a live web camera image transferred from one computer to another is stored on the computer's hard drive or is otherwise retrievable. Moreover, if a live web camera image qualifies as material under the statute, then the subsection prohibiting pornographic performances, *see id.* § 76–10–1204(1) ("A person is guilty of distributing pornographic material when the person ... (f) presents ... a pornographic performance in any public place"), is superfluous because the definition of material would *include* the live performances outlined in that subsection. *See generally Carter v. University of Utah Med. Ctr.,* 2006 UT 78, ¶ 9, 150 P.3d 467 ("Determining the legislature's intent requires that we seek to render all parts [of the statute] relevant and meaningful, and we accordingly avoid interpretations that will render portions of a statute superfluous or inoperative." (alteration in original) (internal quotation marks omitted)).

¶ 18 Finally, in the context of the plain language of the statute describing tangible items, the catchall phrase defining material as "anything which is or may be used as a means of communication," *see* Utah Code Ann. § 76–10–1201(7), is ambiguous. Indeed, while one can envision how a person could distribute a pornographic picture, drawing, photograph, motion picture, etc., it is unclear how a person could distribute a pornographic "means of communication."[4]

---

**3.** Only the fourth element is relevant to the analysis. The first element is not in dispute. Regarding the second element—distribution or exhibition—the State does not specify whether Coble's alleged conduct satisfies the definition of distribution or exhibition for the purposes of the statute. And while Coble argues that his conduct did not constitute distribution, he essentially argues in his brief that "Coble allegedly did *exhibit* himself masturbating." As to the third element, it is undisputed that the live webcast was directed at another person, that is, the undercover police officer. Finally, as to the fifth

element, although the parties dispute whether the act of masturbation is pornographic—or merely lewd—*in this context,* they do not seriously disagree that masturbation would satisfy the definition if the other elements of the statute were present.

**4.** In a similar vein, a person distributes pornographic material when one "transfer[s] possession of" that material, Utah Code Ann. § 76–10–1201(3) (2008). While it is obvious how one might transfer possession of a picture, drawing, or photograph, it is unclear how someone would

Because the statutory language is ambiguous, we employ secondary principles of interpretation to guide our analysis. *See State v. Ireland,* 2006 UT 17, ¶ 11, 133 P.3d 396 ("Only if we find the statutory language to be ambiguous may we turn to secondary principles of statutory construction[.]"). Specifically,

> the ejusdem generis canon of statutory construction ... provides that when a statute contains a list of specific words that relate to a certain type of item and those words are followed by a general word, the general word should be construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.

*Id.* ¶ 13 (internal quotation marks omitted). Applying this principle, the phrase "anything which is or may be used as a means of communication," *see* Utah Code Ann. § 76-10-1201(7), appears to be a catchall provision designed to cover other types of rapidly developing technology, not yet existing at the time of the drafting of the statute, that can be used for *storing* or *reproducing*[5] pornographic material.

¶ 19 In light of the foregoing principles of statutory interpretation, I would conclude that a live web camera image does not constitute material for the purposes of the distributing pornographic material statute. I would also conclude that because Coble did not distribute or exhibit any *material,* the State improperly charged him with violating that provision.

> The obligation of this Court runs to the parties, not the attorneys. If the attorneys have failed to argue an issue precisely as it might best be framed, it is for an appellate court, nevertheless, to decide the issue correctly: "We should not be forced to ignore the law just because the parties have not raised or pursued obvious arguments."

possess, let alone *transfer* possession of, the live image produced by a web camera.

5. At oral argument and in its reply brief, the State argued that the live web camera image constituted an "electrical reproduction" as included in the definition of "material," *see* Utah

*Utah Home Fire Ins. Co. v. Manning,* 1999 UT 77, ¶ 46, 985 P.2d 243 (Stewart, J., dissenting) (quoting *Kaiserman Assocs., Inc. v. Francis Town,* 977 P.2d 462, 464 (Utah 1998)). Because I would conclude that the original felony charge was improper, I would also conclude that the lesser included charge of misdemeanor lewdness does not apply to Coble. Accordingly, I would reverse the district court's decision binding Coble over on the lesser included offense of misdemeanor lewdness and order dismissal of the original felony distribution of pornography charge.

Code Ann. § 76-10-1201(7). I note, however, that by definition "reproduce" means "to produce again." *Webster's Ninth New Collegiate Dictionary* 1001 (9th ed. 1986). Obviously, nothing here was produced again.