2014 UT App 260

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
MICHAEL MELANCON,
Defendant and Appellant.

Opinion
No. 20120508-CA
Filed November 14, 2014

Fifth District Court, Cedar City Department
The Honorable Pamela G. Heffernan
No. 081500742

Matthew D. Carling, Attorney for Appellant

Sean D. Reyes and Deborah L. Bulkeley, Attorneys
for Appellee

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGES
GREGORY K. ORME and J. FREDERIC VOROS JR. concurred.

PEARCE, Judge:

¶ 1    Paul Melancon set fire to his brother's house. After his
arrest, he met with a prosecutor and accepted a plea deal. As
part of that deal, Paul Melancon agreed to testify that he had
enkindled the house as part of a plan his brother, Michael
Melancon (Defendant), had devised to collect the proceeds of an
insurance policy. Before Defendant's trial, Defendant sought to
disqualify the prosecutor, claiming he needed to call the
prosecutor as a witness to testify concerning the plea
negotiations. The trial court denied the disqualification motion.
Defendant was convicted of both aggravated arson as an

accomplice and criminal solicitation. After trial, the court merged the criminal-solicitation conviction into the aggravated-arson conviction. The trial court also denied Defendant's *Shondel* motion, by which he sought to be sentenced only for criminal solicitation.

¶ 2    Defendant challenges his conviction, contending that the trial court abused its discretion in denying his motion to disqualify the prosecutor and also erred by sentencing him for aggravated arson rather than criminal solicitation. Because the prosecutor was not a necessary witness and because Defendant was not entitled to confront the prosecutor, we find no abuse of discretion in the trial court's denial of the disqualification motion. Because the elements of the two offenses differ, we conclude that the *Shondel* doctrine did not apply and that the trial court correctly sentenced Defendant for aggravated arson. We affirm.

BACKGROUND

¶ 3    We recite the facts from the record in the light most favorable to the jury's verdict, supplementing them as necessary to understand the issues raised on appeal. *State v. Marchet*, 2014 UT App 147, ¶ 2 n.3, 330 P.3d 138.

¶ 4    After his arrest, Paul Melancon (Brother) met with a police investigator and a prosecutor. Brother agreed to plead guilty to second-degree felony arson and to testify against Defendant. At trial, Brother testified that Defendant had asked for his help in setting fire to Defendant's house so that Defendant could collect the insurance proceeds. Brother testified that they prepared the house for the fire by removing tools from the garage, placing firearms in a fireproof room, backing up computers, and stashing important documents in a fireproof safe. Defendant instructed Brother on how to ignite the fire.

Defendant then took his family to Las Vegas while Brother stayed behind to carry out the plan.

¶ 5    Brother further testified that he followed Defendant's instructions by removing property from the house, disconnecting the house's circuit breakers, disabling smoke detectors, and perforating the sheetrock in the basement. Brother also spread accelerants throughout the house. Brother set fire to a pillow and threw it into a downstairs media room to ignite the blaze. The fire spread more quickly than he had anticipated, and Brother suffered extensive and severe burns while escaping from the house.

¶ 6    Defendant denied much of Brother's story. Defendant testified that they had not planned to burn down his house, that he had not asked Brother to set his house on fire, and that he had never instructed Brother on how to do so. Defendant sought to discredit Brother's testimony as the result of a plea deal that permitted Brother to plead guilty to a lesser offense. Defendant believed that the prosecutor, Scott Garrett, was a necessary witness to testify concerning the plea negotiations leading to Brother's testimony. Defendant therefore moved to disqualify Garrett from serving as prosecutor in the apparent hope of calling him as a witness. The State noted that the plea negotiations had been recorded and agreed to the admission of the recording to settle any dispute about the content of the negotiations. The State also noted that the police investigator who had been present during the negotiations would testify at the trial and could be cross-examined by Defendant. The trial court denied Defendant's disqualification motion after ruling that an alternative source existed for the impeachment evidence Defendant sought and that Defendant's Confrontation Clause rights would not be violated.

¶ 7    A jury convicted Defendant of criminal solicitation and of aggravated arson under an accomplice-liability theory. Before sentencing, Defendant filed a *Shondel* motion, seeking to be

sentenced solely for the criminal-solicitation conviction. *See State v. Shondel*, 453 P.2d 146, 148 (Utah 1969); *State v. Wolf*, 2014 UT App 18, ¶ 37, 319 P.3d 757 (explaining that, under the *Shondel* doctrine, when the elements of two crimes are wholly duplicative, the defendant may be sentenced only to the lesser punishment). In the alternative, Defendant asked the court to merge the charges and enter his conviction only for first-degree-felony aggravated arson. The State conceded that the convictions should be merged but argued that Defendant was not entitled to the lesser penalty under the *Shondel* doctrine, because the elements of accomplice liability and criminal solicitation did not overlap completely. The trial court ruled that Defendant was not entitled to the lesser penalty, because the elements of the two crimes differed. The trial court did, however, merge the second-degree-felony criminal-solicitation conviction into the first-degree-felony aggravated-arson conviction. The trial court then sentenced Defendant to a five-years-to-life prison term on the aggravated-arson conviction.

¶ 8    Defendant appeals the denial of his disqualification and *Shondel* motions.

ISSUES AND STANDARDS OF REVIEW

¶ 9    Defendant first contends that the trial court abused its discretion in denying the disqualification motion, because the prosecutor was a necessary witness to the plea negotiations and his testimony could have been used to impeach Brother. We review a disqualification decision for an abuse of discretion. *Snow, Christensen & Martineau v. Lindberg*, 2013 UT 15, ¶ 18, 299 P.3d 1058.

¶ 10    Defendant also contends that the trial court erred by failing to apply the *Shondel* doctrine and sentence him for criminal solicitation only. We review a trial court's application of

the *Shondel* doctrine for correctness. *State v. Jensen*, 2004 UT App 467, ¶ 8, 105 P.3d 951.


ANALYSIS

I. Defendant's Motion to Disqualify Garrett

¶ 11   Defendant asserts that the trial court abused its discretion by denying his motion to disqualify Garrett. The trial court ruled that it was too late in the proceedings to disqualify a prosecutor, that it was not "likely" that Garrett would be called as a necessary witness, and that there was no Confrontation Clause violation because Brother's testimony could be impeached by the recorded plea negotiations.

A.     Garrett was not a necessary witness.

¶ 12   Defendant sought to discredit Brother's testimony by explaining to the jury that it "was given in hopes of gaining a favorable plea agreement, and it was given based upon promises made directly by Scott Garrett and his involvement in that interview." To do so, Defendant argued that he might need to call Garrett as a witness "to talk about what his promises were, why he promised it, and why he proceeded to believe" Brother's testimony. The Utah Rules of Professional Conduct provide, in pertinent part, "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless . . . the testimony relates to an uncontested issue . . . ." Utah R. Prof'l Conduct 3.7(a)(1). On appeal, Defendant contends that the trial court should have ruled that Garrett was a necessary witness and thus disqualified Garrett from prosecuting this case. He argues that the investigating officer's testimony was not a valid alternative to Garrett's, because the officer should not have participated in the plea negotiations.

¶ 13　We first note limitations on the testimony Defendant sought to elicit from Garrett. Before the trial court, Defendant argued that Garrett could testify not only to the content of the plea negotiations but also to why Garrett believed Brother's version of events and offered Brother a plea deal. On appeal, Defendant argues that he "should have been allowed to cross-examine Garrett regarding his statements and reasoning related to the plea negotiations. It was insufficient for [Brother] and the officer to testify as to Garrett's statements, and they could not testify as to his reasoning or subjective position."

¶ 14　The attorney-work-product doctrine generally protects the work of prosecutors from the discovery process. *See* 23 Am. Jur. 2d *Depositions and Discovery* § 278 (2014) (titled "Work product of prosecution" and noting that "the accused is not entitled to learn about the prosecutor's decision whether to prosecute" including the "opinion work product prepared by the prosecution in anticipation of any criminal prosecution, not merely the particular prosecution in which the request for disclosure is made"). *Cf. Southern Utah Wilderness Alliance v. Automated Geographic Ref. Ctr.*, 2008 UT 88, ¶ 24, 200 P.3d 643 ("'[C]ore or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances.'" (quoting *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003))). Defendant provides no contrary authority to support his assertion that he was entitled to present evidence of the prosecutor's internal thought processes that resulted in his offer of a plea deal to Brother.

¶ 15　We next consider Defendant's argument that the trial court should have disqualified Garrett so that he could be called to testify concerning the plea negotiations. Under Rule 3.7 of the Utah Rules of Professional Conduct, Defendant needed to demonstrate that Garrett was "likely to be a necessary witness." Utah R. Prof'l Conduct 3.7(a). If the testimony sought to be elicited from a lawyer is "'duplicative and obtainable from other

sources, [the lawyer's] testimony may not be necessary, and the lawyer should not withdraw or should not be subject to disqualification.'" *Rupp v. Transcontinental Ins. Co.*, 2:07-CV-333-TC-PMW, 2008 WL 2627516, at *3 (D. Utah July 2, 2008) (alteration in original) (quoting Utah State Bar Ethics Advisory Opinion No. 04-02, ¶ 5 (April 19, 2004)). Thus, a party seeking to disqualify an opposing attorney because the party wishes to call the attorney as a witness must persuade the court that the testimony sought from the attorney is unobtainable from other sources. *Id.*

¶ 16    Here, a police investigator attended the plea negotiations and was available to testify. Defendant relies on statements this court made in *State v. Thurston*, 781 P.2d 1296 (Utah Ct. App. 1989), to explain why he believes the testimony of the investigating officer was not a valid alternative to the testimony Defendant sought to elicit from Garrett. In *Thurston*, this court discussed an Arizona Supreme Court case in which a defendant and a prosecutor reached a plea agreement under which the prosecutor promised not to make any sentencing recommendation. *See id.* at 1299 (examining *State v. Rogel*, 568 P.2d 421, 423 (Ariz. 1977)). In the Arizona case, the investigating police officer prepared a presentence report that recommended a lengthy sentence. *Id.* The Arizona Supreme Court concluded that because the police do not participate in plea negotiations and have no input on the bargain reached, the plea deal between the prosecutor and the defendant was not breached by the officer's recommendation. *Id.* The *Thurston* court agreed and held that an "investigating police department is not bound in making sentencing recommendations by a plea bargain agreement entered into by the prosecutor." *Id.* at 1300. Defendant construes this holding to mean that "plea negotiations should not occur with police input or participation." Consequently, in Defendant's view, even though the police investigator in this case was present at the plea negotiations, "the officer could not testify to such negotiations since they are not allowed to have

input and plea agreements are the prerogative of the prosecutorial branch."

¶ 17 Defendant's characterization stretches *Thurston* too far. Our rules of evidence generally allow an individual with personal knowledge of a matter to testify as a percipient witness. *See* Utah R. Evid. 602. Nothing in *Thurston* changes that, and Defendant's argument thus fails to demonstrate that the police investigator was barred from testifying about the plea negotiations.

¶ 18 Furthermore, there appear to be at least two other alternative sources for the non-work-product testimony Defendant sought to elicit from Garrett: Brother himself and the recording of the negotiations. Defendant does not explain why the testimony he sought was not obtainable from Brother or why the recording of the negotiations was insufficient to impeach Brother's testimony.

¶ 19 Because alternatives to Garrett's testimony were available, we cannot agree with Defendant's assertion that Garrett was a necessary witness to a contested issue.[1] It follows that the trial court did not abuse its discretion by determining that Garrett was not a necessary witness.

---

1. In addition to being necessary, the testimony sought from an attorney facing disqualification must relate to a contested issue. *See Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1309 (10th Cir. 2000), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011). A lawyer should not be disqualified if there is no such contested issue. *Id.* Here, Defendant has not identified a contested factual issue.

B.      Defendant has not shown that he was entitled to confront Garrett.

¶ 20    Defendant next contends that the "Sixth Amendment requires that [Defendant] be afforded the right to confront Garrett since his plea negotiations were 'testimonial evidence.'" The Sixth Amendment's Confrontation Clause provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The focus of the Confrontation Clause is on witnesses who bear testimony against the accused." *Salt Lake City v. Williams*, 2005 UT App 493, ¶ 15, 128 P.3d 47.

¶ 21    Defendant had the opportunity to cross-examine each of the witnesses who testified at trial. Nevertheless, Defendant argues that statements Garrett made during the plea negotiations were testimonial in nature and therefore raised the type of Confrontation Clause concerns the United States Supreme Court described in *Crawford v. Washington*, 541 U.S. 36, 59, 68 (2004) (holding that out-of-court testimonial statements may only be admitted if the declarant is unavailable and there has been a prior opportunity for cross-examination). Even assuming without deciding that Defendant is correct in characterizing a prosecutor's statements during plea negotiations as testimonial, Defendant does not identify any statement Garrett made during plea negotiations that was introduced at trial. Because Garrett did not testify and none of his out-of-court statements were used at trial, Defendant's constitutional right to confront the witnesses against him was neither implicated nor violated.

¶ 22    Defendant has not shown that the testimony he sought to elicit from Garrett was unavailable from any alternative source. Nor has Defendant shown that he was entitled to confront Garrett. As a result, Defendant fails to demonstrate that Garrett should have been disqualified from serving as the prosecutor.

Consequently, the trial court properly denied Defendant's motion to disqualify, and we affirm.[2]

## II. The *Shondel* Doctrine

¶ 23   Defendant contends that the trial court erred by sentencing him for accomplice-liability aggravated arson. He asserts that the court should have applied the *Shondel* doctrine and sentenced him only to the lesser punishment attendant to a conviction for criminal solicitation. The trial court merged Defendant's criminal-solicitation conviction into his aggravated-arson conviction. But the court ruled that Defendant was not entitled to the lesser penalty under the *Shondel* doctrine, because it determined that the elements of the two offenses were not wholly duplicative.

¶ 24   The *Shondel* doctrine limits the application of overlapping criminal statutes. *State v. Williams*, 2007 UT 98, ¶ 12, 175 P.3d 1029. While there is "nothing inherently wrong with criminal laws that overlap," "the enforcement of criminal laws with overlapping elements or with disparate penalties for identical conduct is limited by fundamental constitutional guarantees,

---

2. Defendant also contends that because the State contributed to a delay in the filing of the disqualification motion, it was improper for the trial court to hold the delay against him. However, the trial court stated that the untimeliness of the disqualification motion was "not the primary reason that I'm going to deny it." Rather, the trial court based the denial principally on the determination that Garrett was not a likely or necessary witness. Because Defendant has not demonstrated an abuse of discretion in that determination, which was a sufficient independent ground for denying his motion to disqualify, we need not further address the timeliness of his motion.

most notably the guarantees against double jeopardy and of equal protection of the laws." *Id.*

¶ 25   In *Shondel*, the Utah Supreme Court held that "where there is doubt or uncertainty as to which of two punishments is applicable to an offense[,] an accused is entitled to the benefit of the lesser." *State v. Shondel*, 453 P.2d 146, 148 (Utah 1969). Accordingly, "where two statutes define *exactly* the same penal offense, a defendant can be sentenced only under the statute requiring the lesser penalty." *State v. Jeffries*, 2009 UT 57, ¶ 15, 217 P.3d 265 (emphasis added) (citation and internal quotation marks omitted). Put another way, the *Shondel* doctrine applies only when two statutes are "wholly duplicative as to the elements of the crime." *See State v. Bryan*, 709 P.2d 257, 263 (Utah 1985); *see also State v. Kent*, 945 P.2d 145, 147 (Utah Ct. App. 1997). The *Shondel* doctrine does not apply when one or both of the crimes at issue require proof of some fact or element not required to establish the other, because the statutes do not criminalize identical conduct. *State v. Coble*, 2010 UT App 98, ¶ 8, 232 P.3d 538.

¶ 26   The elements of the two statutes at issue here are not wholly duplicative. Under Utah's accomplice-liability statute, a defendant is liable for criminal conduct if he, "acting with the mental state required for the commission of an offense[,] . . . solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense." Utah Code Ann. § 76-2-202 (LexisNexis 2003). A defendant "commits criminal solicitation if with intent that a felony be committed, he solicits, requests, commands, offers to hire, or importunes another person to engage in specific conduct that under the circumstances as [the defendant] believes them to be would be a felony or would cause the other person to be a party to the commission of a felony." *Id.* § 76-4-203(1).

¶ 27 Accomplice liability, unlike criminal solicitation, is not an independent crime. Because accomplice liability is not "a separate offense from principal liability," *State v. Gonzales*, 2002 UT App 256, ¶ 12, 56 P.3d 969, it is "impossible for the State to charge an individual with accomplice liability standing alone," *State v. Briggs*, 2008 UT 75, ¶ 16, 197 P.3d 628. Rather, the State must prove that an underlying crime was actually attempted or completed in order to secure a defendant's conviction as an accomplice to that crime. *See Briggs*, 2008 UT 75, ¶ 16. Conversely, a criminal solicitation charge requires the State to prove that the defendant solicited conduct that would be a crime if performed but does not require that the solicited person actually attempt or complete the underlying crime. *Compare* Utah Code Ann. § 76-2-202, *with* Utah Code Ann. § 76-4-203(1).

¶ 28 A defendant cannot be an accomplice to a crime that is neither attempted nor completed. But a defendant may be guilty of criminally soliciting an unattempted crime. Consequently, the *Shondel* doctrine is not implicated, because the elements of these two statutes are not "wholly duplicative," *Bryan*, 709 P.2d at 263, and do not "criminalize identical conduct," *Coble*, 2010 UT App 98, ¶ 8 (citation and internal quotation marks omitted).[3]

¶ 29 We hold that the accomplice-liability and criminal-solicitation statutes do not require proof of the same elements and that the *Shondel* doctrine is therefore inapplicable. As a result, Defendant is not entitled to the lesser penalty associated with criminal solicitation. We conclude that the trial court did

---

3. Stated differently, the elements of criminal solicitation would have to be wholly duplicative of the elements of accomplice-liability aggravated arson for *Shondel* to apply in this case.

not err by sentencing Defendant for aggravated arson under an accomplice-liability theory.[4]

CONCLUSION

¶ 30   Defendant has failed to show that the trial court abused its discretion by denying his disqualification motion. We conclude that the *Shondel* doctrine does not apply, because the elements of criminal solicitation and accomplice liability are not wholly duplicative.

¶ 31   Affirmed.

_____

4. We express no opinion on whether the trial court correctly determined that the criminal-solicitation conviction merged into the aggravated-arson conviction.