**2020 UT App 112**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
LUCILA RUBY ARGUELLES,
Appellant.

Opinion
No. 20190521-CA
Filed August 6, 2020

Third District Court, Salt Lake Department
The Honorable Amber M. Mettler
No. 181908939

W. Andrew McCullough, Attorney for Appellant

Simarjit S. Gill, Heather Lindsay, Steven L. Grayson,
and Victoria A. Turner, Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.

MORTENSEN, Judge:

¶1     Lucila Ruby Arguelles was charged with a class A misdemeanor for sexual solicitation after an encounter with an undercover detective in a hotel room. Arguelles moved to dismiss the case, arguing that she was entitled to be prosecuted only for a class B misdemeanor prostitution offense under the *Shondel* doctrine[1] and that the district court lacked jurisdiction

---

1. *See State v. Arave*, 2011 UT 84, ¶ 12, 268 P.3d 163 (explaining that the *Shondel* doctrine "preserves the equal protection of the laws by requiring criminal statutes to be written so that the exact same conduct is not subject to different penalties depending

(continued…)

over that class B misdemeanor. The district court denied the motion. We granted Arguelles's request for interlocutory review. We affirm.

BACKGROUND[2]

¶2 On July 26, 2018, an undercover detective (Detective) located an advertisement on an escort-services website and called the listed phone number to arrange a meeting with a female at a hotel in Salt Lake City. Detective waited in the hotel room for the escort's arrival. When Arguelles arrived, she knocked on the door and the two engaged in small talk for a short time. Arguelles asked Detective for the $200 show-up fee, and Detective promptly paid her in cash. Arguelles then told Detective to "get comfortable" as she entered the bathroom. Detective, understanding Arguelles's instruction to mean that he should undress, disrobed except for his underwear. Arguelles emerged from the bathroom still fully clothed and asked Detective if he "knew how this went." Detective responded that he understood the $200 was just for her to show up and that "she worked and did other things off of tips" after that.

¶3 At that time, Detective indicated that "all [he] wanted was a blowjob." Arguelles responded by nodding her head and stating, "My tips start at $500." Detective then stated, "It's a deal" and gave Arguelles $500. Arguelles then made a statement clearly indicating to Detective that she was not performing oral

---

(…continued)
upon which of two statutory sections a prosecutor chooses to charge" (cleaned up)).

2. "Because this case comes to us on an interlocutory appeal, the facts have yet to be determined. On interlocutory review, we recount the facts as alleged and in a light most favorable to the ruling below." *State v. Taylor*, 2015 UT 42, ¶ 2 n.2, 349 P.3d 696.

sex, that it was "out of the books." The two then engaged in a discussion about what Arguelles would do for the $500, ultimately agreeing that Arguelles would "dance or something like that." Arguelles entered the bathroom a second time and then emerged dressed only in lingerie. Arguelles proceeded to dance provocatively and eventually revealed the top portion of her areolas. She also lay next to Detective on the bed and "grazed her fingers along [his] penis over [his] underwear" a couple of times. Arguelles then did some additional dancing, at which time the detective signaled other detectives to intervene, ending the encounter.

¶4     Arguelles was charged in the district court with sexual solicitation, a class A misdemeanor under Utah Code section 76-10-1313(1)(a), for offering or agreeing to commit a sex act for a fee.[3] Arguelles moved to dismiss the case for lack of jurisdiction, arguing that under her right to equal protection of the law, as articulated by the *Shondel* doctrine, she should have been charged with the lesser offense—prostitution, a class B misdemeanor—in the justice court. The district court denied Arguelles's motion, concluding the *Shondel* doctrine did not apply. This interlocutory appeal followed.

ISSUES AND STANDARDS OF REVIEW

¶5     Arguelles asserts that the district court erred in denying her motion to dismiss under the *Shondel* doctrine. "We review a trial court's application of the *Shondel* doctrine for correctness." *State v. Melancon*, 2014 UT App 260, ¶ 10, 339 P.3d 151.

¶6     Arguelles further contends that if she is entitled to prosecution for the lesser offense, the district court did not have

_____

3. Notably, Arguelles is only "charged with offering or agreeing to commit a sex act for a fee . . . [and] is not charged with anything else," including actually engaging in a sex act.

jurisdiction and ought to have dismissed the case so that it could be brought in the justice court. "Because a trial court's grant or denial of a motion to dismiss is a question of law, the standard of review is correctness." *South Jordan City v. Summerhays*, 2017 UT App 18, ¶ 5, 392 P.3d 855 (cleaned up); *see also Salt Lake City v. Weiner*, 2009 UT App 249, ¶ 5, 219 P.3d 72 ("Whether the district court has jurisdiction is a question of law that we review for correctness . . . ." (cleaned up)).

## ANALYSIS

¶7 Under Utah's constitutional guarantee of uniform operation of the laws, the *Shondel* doctrine "preserves the equal protection of the laws by requiring criminal statutes to be written so that the exact same conduct is not subject to different penalties depending upon which of two statutory sections a prosecutor chooses to charge." *State v. Arave*, 2011 UT 84, ¶ 12, 268 P.3d 163 (cleaned up); *see State v. Williams*, 2007 UT 98, ¶¶ 20–21, 175 P.3d 1029; *State v. Shondel*, 453 P.2d 146, 147 (Utah 1969); *see also* Utah Const. art. I, § 24. *Shondel* is only "implicated at the intersection of duplicative criminal statutes" that invite a "risk of arbitrary prosecutorial discretion." *State v. Ainsworth*, 2017 UT 60, ¶ 22, 423 P.3d 1229; *see also State v. Fedorowicz*, 2002 UT 67, ¶ 48, 52 P.3d 1194 ("*Shondel* does not preclude a prosecutor from choosing between two different crimes in charging an individual for particular conduct; rather, it requires that a prosecutor who elects to charge an individual with a crime carrying a higher penalty or classification do so knowing that the prosecutor will be required to prove at least one additional or different element to obtain a conviction for the higher-penalty crime."). When "statutes define two crimes having precisely the same elements with different penalties," a defendant is "sentenced only on the lesser offense" under the *Shondel* doctrine. *Arave*, 2011 UT 84, ¶ 12 (cleaned up).

¶8 In 2017, our supreme court clarified the two-step inquiry used to determine whether there is a *Shondel* problem. *See*

*Ainsworth*, 2017 UT 60, ¶ 26. First, as a threshold matter, we inquire whether the two statutes, at the time of the charged offense, were wholly duplicative as to the facts and elements of the crime. *Id.* ¶ 25; *see also Fedorowicz*, 2002 UT 67, ¶ 50 (looking to provisions at time of charged offense). If the threshold question reveals that "each statute requires proof of some fact or element not required to establish the other, there is no *Shondel* problem" and the inquiry ends. *Ainsworth*, 2017 UT 60, ¶ 25 (cleaned up). In undertaking the threshold inquiry, we "treat[] as irrelevant the conduct of a particular defendant; only the content of the statutes matters." *Williams*, 2007 UT 98, ¶ 14. Second, if necessary, we determine whether the two statutes have identical effective dates. *Ainsworth*, 2017 UT 60, ¶ 27; *Shondel*, 453 P.2d at 147. If the dates differ, "the later-enacted provision will be deemed to impliedly repeal the earlier one." *Ainsworth*, 2017 UT 60, ¶ 27. However, if the dates are the same, *Shondel* "require[s] a reduction to the lesser offense." *Id.*

¶9    We begin the *Shondel* inquiry by comparing the plain language of the relevant provisions as a matter of statutory construction. *See Fedorowicz*, 2002 UT 67, ¶ 49. The prostitution statute at the time of the charged offense provided in relevant part that

> (1) An individual is guilty of prostitution when the individual:
>
> (a) engages, offers, or agrees to engage in any sexual activity with another individual for a fee, or the functional equivalent of a fee;
>
> . . . .
>
> (2)(a) Except as provided . . . , prostitution is a class B misdemeanor.

Utah Code Ann. § 76-10-1302 (LexisNexis 2017). And the sexual solicitation statute provided in relevant part that

(1) An individual is guilty of sexual solicitation when the individual:

(a) offers or agrees to commit any sexual activity with another individual for a fee, or the functional equivalent of a fee;

. . . .

(3) Except as provided . . . an individual who is convicted of sexual solicitation under this section . . . is guilty of a class A misdemeanor.

*Id.* § 76-10-1313 (Supp. 2018).

¶10    The challenged provisions—subsections 1(a) of the prostitution and sexual solicitation statutes—bear striking similarities. However, the subsections do not contain identical language. As relevant here, the prostitution statute prohibits offering or agreeing to *engage in* sexual activity, while the sexual solicitation statute prohibits offering or agreeing to *commit* sexual activity. Arguelles suggests that this "slightly different language" lacks significance. The State does not contest the point. And we agree that the slight difference of wording in each provision lacks significance because it does not create a distinction between the facts or elements required to prove the offenses. *See Ainsworth*, 2017 UT 60, ¶ 26. Both statutes require proof that an individual (1) offers or agrees to (2) participate in any sexual activity (3) with another individual (4) for a fee or the functional equivalent of a fee. Thus, under the plain language of the statutes, there is a complete overlap in the facts and elements required to be proved. *See Fedorowicz*, 2002 UT 67, ¶ 51 (looking to the actus reus and the mens rea to determine if the statutes were wholly duplicative); *State v. Wolf*, 2014 UT App 18, ¶¶ 37–38, 319 P.3d 757 (assessing whether the contested provisions contain the same elements).

¶11 The State maintains on appeal that the *Shondel* doctrine does not apply because elements of the variations of the crimes do not fully overlap. We acknowledge that the sexual solicitation statute prohibits only the offer or agreement to commit sexual activity, while the prostitution statute prohibits offers, agreements, and the act itself of engaging in sexual activity. But we do not agree that all variations of an offense must overlap with the elements of another offense before *Shondel* is implicated. *See Williams*, 2007 UT 98, ¶ 14 ("The *Shondel* doctrine limits its inquiry to the elements of the criminal statutes which the defendant claims overlap . . . ."); *see also Ainsworth*, 2017 UT 60, ¶ 28 (discussing only the variants of the DUI and measurable substance provisions implicated in the *Shondel* inquiry). Inasmuch as the prostitution statute additionally prohibits the act of engaging in sexual activity, the statute implicates a variation of the prostitution offense that is not properly considered in this *Shondel* inquiry, where Arguelles is only "charged with offering or agreeing to commit a sex act for a fee." Indeed, the focus of *Shondel* and its progeny is on what elements would need to be proved at trial for a conviction. Here, the elements to be proved in the context of this charge are wholly duplicative.

¶12 Because the provisions are wholly duplicative as to the offense charged, the first step of the *Shondel* inquiry is met. We proceed to discuss whether the two provisions have identical effective dates because "[e]ven if two statutes are wholly duplicative, *Shondel* does not necessarily require a reduction to the lesser offense." *Ainsworth*, 2017 UT 60, ¶ 27. Rather, the "requirement is triggered only as to two provisions with identical effective dates. Otherwise the later-enacted provision will be deemed to impliedly repeal the earlier one." *Id.* This is premised on "the generally-recognized rule that where there is conflict between two legislative acts the latest will ordinarily prevail." *Shondel*, 453 P.2d at 147.

¶13 The "offers or agrees" language appearing in the prostitution statute was removed in 1993 by the very bill that the

legislature used to enact the sexual solicitation statute. *See* H.B. 24, 50th Leg., 1993 Gen. Sess. (Utah 1993). However, that same language was reintroduced to the prostitution statute in 2017, and it remained in the sexual solicitation statute. *See* S.B. 230, 62d Leg., 2017 Gen. Sess. (Utah 2017) (effective date May 9, 2017). The 2017 amendment to the prostitution statute created some overlap, but no *Shondel* problem existed at that time because both crimes were punishable as a class B misdemeanor; there was no lesser offense. However, an amendment to the sexual solicitation statute in 2018 changed sexual solicitation from a class B misdemeanor to a class A misdemeanor offense, creating a potential *Shondel* problem because the statutes thereafter applied to the same conduct but with disparate penalties. *See* S.B. 214, 62d Leg., 2018 Gen. Sess. (Utah 2018) (effective date May 8, 2018).[4] The prostitution provision was not amended in 2018, causing the sexual solicitation provision to be the later-enacted provision at the time of the charged offense.

¶14 Arguelles, however, contends that subsequent amendments to the provisions at issue caused them to have the

---

4. According to the legislative hearing held to discuss the bill, the legislator who sponsored it indicated the amendment was designed to increase the punishment for sexual solicitation to match that of prostitution, *see* Solicitation Amendments, S.B. 214, 2018 Gen. Sess. (Utah 2018), https://le.utah.gov/av/floorArchive.jsp?markerID=103436 —perhaps meaning to reference the offense of patronizing a prostitute, *see* Utah Code Ann. § 76-10-1303 (2017), which became a class A misdemeanor in 2017, *see* S.B. 230, 62d Leg., 2017 Gen. Sess. (Utah 2017). Prostitution remains a class B misdemeanor, *see* Utah Code Ann. § 76-10-1302(2) (2020), except for second and all subsequent convictions, in which case it is elevated to a class A misdemeanor, *see id.*; *see also State v. Williams*, 2007 UT 98, ¶ 21, 175 P.3d 1029 (quoting a legal treatise to suggest *Shondel* problems will arise as a likely consequence of legislative mistakes).

same effective date, entitling her to the lesser offense under *Shondel*. Indeed, both provisions have since been amended and now share the same effective date. *See* H.B. 40, 63d Leg., 2019 Gen Sess. (Utah 2019) (amending the sentencing provisions of both prostitution and sexual solicitation in Utah Code sections 76-10-1302(2) and -1313(3), respectively, effective date May 14, 2019); H.B. 291, 63d Leg., 2020 Gen Sess. (Utah 2020) (amending both Utah Code sections 76-10-1302(1) and -1313(1), effective date May 12, 2020). However, the *Shondel* doctrine seeks to remedy the problem of "arbitrary prosecutorial discretion" in charging by ensuring the exact same conduct is not subject to disparate penalties based on that discretion. *Ainsworth*, 2017 UT 60, ¶ 22; *see Arave*, 2011 UT 84, ¶ 12 ("[*Shondel*] preserves the equal protection of the laws by requiring criminal statutes to be written so that the exact same conduct is not subject to different penalties depending upon which of two statutory sections a prosecutor chooses to charge." (cleaned up)); *see also Fedorowicz*, 2002 UT 67, ¶ 50 (analyzing provisions at time of charged offense). *Shondel* also fulfills its purpose by "permit[ting] a defendant to be sentenced only on the lesser offense." *Arave*, 2011 UT 84, ¶ 12; *see also State v. Melancon*, 2014 UT App 260, ¶ 25, 339 P.3d 151 ("Where two statutes define exactly the same penal offense, a defendant can be sentenced only under the statute requiring the lesser penalty." (cleaned up)). Because the *Shondel* inquiry considers the provisions only at the time of the charged offense or at the time of sentencing, the subsequent amendments, which occurred in the interim, have no bearing on our *Shondel* analysis at this stage.[5] In the context of this interlocutory appeal, only *Shondel*'s effect *at the time of charging* is at issue.

¶15 Because the sexual solicitation statute was the later-enacted provision at the time of the charged offense, it is deemed

---

5. In so holding, we offer no opinion as to any effect the amendments may have at the time of sentencing.

to have impliedly repealed the earlier prostitution provision. Accordingly, there is no *Shondel* issue in this case at this time.

¶16    Inasmuch as Arguelles's claim under *Shondel* fails, so too does her contention that the district court lacked jurisdiction over her case—a contention that hinged on securing a reduced offense under *Shondel*. We therefore do not address her jurisdictional claim further.

## CONCLUSION

¶17    We hold that the *Shondel* doctrine does not apply to the charged offense at this time and that the district court therefore retains jurisdiction over Arguelles's case.

¶18    Affirmed.

———————